In re Petition of Elaine M. YOUNG-BLOOD, M. Linda Hughes, Thomas O.H. Smith, Jr., Raymond D. Lackey, Patrick J. McHale, Kimberly K. Whaley, Wayne Taylor, R. Kreis White, Paul L. Burson, John B. Allyn, Jerry M. Martin, Robert L. Farnette, Ernest E. Baker, Carol A. Beeler, and Dennis E. Blevins, to review and set aside formal ethics *opinion 93–F–132* of the Board of Professional Responsibility: To stay the effectiveness of that opinion pending a final decision by the Court; and to adopt modifications or additions to Rule 8 of the Rules of this Court to address specifically the practices of staff counsel of liability insurance companies.

Supreme Court of Tennessee,
at Nashville.

Feb. 16, 1995.

REID, Justice.

Petitioners seek review and vacation of Formal Ethics Opinion 93–F–132 issued by the Board of Professional Responsibility and the adoption of amendments to the Code of Professional Responsibility.[1]  The Board has responded to the petition with an answer and briefs.  The Court also has considered *amicus* briefs and proposed findings of fact and conclusions of law submitted by the *amici curiae*.[2]

In response to an inquiry regarding the ethical propriety of a lawyer employee of a liability insurance company representing that company's insureds, an ethics committee of the Board of Professional Responsibility issued formal opinion 93–F–132, in which the Board found:

1. It is improper for in-house attorney employees of an insurance company to represent individual insureds in legal matters arising under that company's policy.

2. Such an arrangement constitutes a lay corporation practicing law.

3. The holding out of an in-house attorney employee as a separate and independent law firm constitutes an unethical and deceptive practice.

1. The Code of Professional Responsibility is found in Rule 8 of the Rules of the Supreme Court of the State of Tennessee.

2. The following received permission to appear as *amici curiae:* Aetna Casualty and Surety Company; Alliance of American Insurers; Allstate Insurance Company; American Insurance Association; American International Group; Chattanooga Bar Association; Continental Casualty Company; Continental Insurance Corporation; Insurance Company of North America; Liberty Mutual Insurance Company; Nashville Bar Association; National Association of Independent Insurers; Nationwide Mutual Insurance Company; Permanent General Assurance Corporation; Royal Insurance Company of America; St. Paul Fire and Marine Insurance; State Farm Mutual Automobile Insurance Company; Tennessee Bar Association; Tennessee Trial Lawyers Association; Travelers Insurance Group, Incorporated; United Services Automobile Association; and United States Fidelity & Guaranty Company.

Petitioners are employees of various liability insurance companies doing business in Tennessee, who, pursuant to their employment, represent their employers' insureds according to the terms of the insurance policies issued to the insureds. Petitioners contend that the Board's construction of the disciplinary rules set forth in the formal ethics opinion is subject to review by this Court, that the determinations made in the opinion are not required or permitted by the rules, and that the opinion should be declared invalid.

The Board of Professional Responsibility insists that the opinion accurately resolves the ethical issues presented and asks the Court to sustain the validity of the opinion.

In response to the Board's suggestion that a special master be appointed to make findings of fact, the Court has concluded that a special master could not develop determinative findings of fact sufficient to support a holding more instructive than the Court's review of the three findings made in the formal ethics opinion under review. Consequently, that motion is denied.

Pursuant to the Court's request, some of the *amici curiae* filed copies of their policies and procedures for providing legal counsel for their insureds. The Court makes no finding with regard to those policies and procedures.

The Court finds that the issues presented are properly before the Court for resolution and that the formal ethics opinion should be modified as set forth below.

### 1.

■ The Court first addresses the assertion set forth in the *amicus* brief filed by the Chattanooga Bar Association, that this Court does not have jurisdiction to review a formal ethics opinion issued by the Board of Professional Responsibility.

This Court's authority to consider the validity of formal ethics opinions is implicit in its rules and prior decisions. Rule 9 provides for the establishment and operation of the Board, which, as indicated by its full name, the Board of Professional Responsibility of the Supreme Court of Tennessee, is an agency of this Court. Tenn.R.Sup.Ct. 9, § 5. The responsibilities of the Board include the duty to "issue and publish Formal Ethics Opinions on proper professional conduct. . . ." Tenn.R.Sup.Ct. 9, § 26.4(a). Jurisdiction to review these ethics opinions is grounded in the Court's inherent power to review the actions of its boards, commissions, and other agencies. In *Belmont v. Board of Law Examiners,* the Court reviewed the action taken by another of its agencies, the Board of Law Examiners. With regard to its authority, the Court stated,

> Prior to discussing the constitutional question herein involved, we must make it clear that the petition to review the action of the Board of Law Examiners in denying petitioner's request to take the examination for the fifth time is properly before this Court. We reach the foregoing conclusion because this Court has the inherent power to prescribe and administer rules pertaining to the licensing and admission of attorneys and as a necessary corollary thereto, no other court in Tennessee can construe or determine the applicability of a rule used to implement that power. It results, therefore, if this Court has the inherent and original power to prescribe the rules, then this Court has the original power to review the action of the Board of Law Examiners in interpreting and applying them.

*Belmont v. Board of Law Examiners,* 511 S.W.2d 461, 462 (Tenn.1974). *See also, Petition of Tenn. Bar Ass'n,* 539 S.W.2d 805, 810 (Tenn.1976) (Harbison, J., concurring) ("[T]his Court has long had and has exercised the role of prescribing and seeking to enforce and uphold the standards of professional responsibility in this State."). In *State v. Jones,* 726 S.W.2d 515, 520 (Tenn.1987), the Court reviewed and vacated an ethics opinion as being "an overbroad interpretation of the Code." This power to review is inherent in the grant from the sovereign to the Court, and the Court reaffirms its original and exclusive authority to formulate and enforce rules governing the practice of law. That authority includes the review of formal ethics opinions issued by the Board.

### 2.

The Chattanooga Bar Association also raises a closely related issue, the standing of the petitioners to file an original petition in this Court. That *amicus* argues that the only procedure whereby the issues presented can be adjudicated is for disciplinary proceedings to be brought against persons who violate the provisions of the opinion.

The petitioners are entitled to file the petition seeking redress of an alleged wrong. Article I, Section 17 of the Constitution of Tennessee provides that, "all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law...." *See MARTA v. Metro. Gov't of Nashville,* 842 S.W.2d 611, 615 (Tenn.App.1992) (to "establish standing, a party must demonstrate (1) that it sustained a distinct and palpable injury, (2) that the injury was caused by the challenged conduct, and (3) that the injury is apt to be redressed by a remedy that the court is prepared to give. *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984)."). In this case, the formal ethics opinion finds that petitioners' employment constitutes unethical conduct for which they are at risk of being sanctioned and, therefore, effectively prohibits their continued employment. No other authority may revise the rules of the Court; consequently, under these circumstances, the petitioners have standing to file an original petition in this Court seeking review of the opinion.

The Rhode Island Supreme Court reached the same conclusion in a similar case. In *In Re: Ethics Advisory Panel Opinion,* 554 A.2d 1033 (R.I.1989), the court considered a petition filed by several members of the bar seeking the court's review of an ethics advisory opinion. In that case, the petitioning attorneys sought review from the Supreme Court because the ethics opinion raised "serious ethical concerns regarding a practice that had become standard and customary, that practice being the routine requesting and rendering of validity and enforceability opinion letters on behalf of clients." *Id.* at 1033–1034. Since new rules of professional conduct had been adopted after the render-

ing of the opinion, the court determined that the issue was moot. With regard to the issue of the propriety of the court's reviewing the ethics opinion, the court, however, stated:

> This court must restate what the advisory panel sets forth in each of its opinions, that is, that the Ethics Advisory Panel's advice is only protective in nature. There is no requirement that an inquiring attorney abide by a panel opinion, but if the attorney does abide by it, he or she would be fully protected from any charge of impropriety. The opinions are purely advisory. Consequently it would only be in the rarest of circumstances that this court would respond to a request that we review one of the panel's opinions.
>
> Our response in this situation is prompted to some degree by the importance many members of the bar give to the panel's opinions. The opinion in question appeared to raise serious ethical questions about the actions of many members of the bar who are called upon in their practice to issue and request third-party-opinion letters on behalf of their clients—a matter of practice that has become standard procedure not only in Rhode Island but, as far as we can determine, throughout the country as well.

*Id.* at 1034.

However, the Court's authority to entertain the petition is not dependent upon the extent to which petitioners have suffered injury or are placed at risk by the action of the Board. The Court may in its discretion, upon application or upon its own initiative, consider the amendment, revision, or repeal of its rules and any interpretation or application thereof by its agencies. Central to the issues presented here is the duty to defend the insured assumed by a liability insurance carrier. As stated in 1A Rowland H. Long, *The Law of Liability Insurance* § 5.01 (1992):

> The duty of an insurer to defend a claim brought against its insured under the terms of a liability policy is one of the most important benefits included in a policy of liability insurance.

Because of the significance of the opinion to the practice of law, the operation of the judicial system, the public generally, and to petitioners and others affected directly, the Court elects to review the opinion.

### 3.

The Board found three ethical violations of the Code in response to the following request for a formal ethics opinion: "Inquiry is made concerning the ethical propriety of an attorney becoming an in-house employee-attorney to represent and defend the insureds of the employer-insurer."

The first conclusion reached by the Board was:

> It is improper for in-house attorney employees of an insurance company to represent individual insureds in legal matters arising under that company's policy.

The opinion essentially establishes a *per se* prohibition against attorney-employees of an insurance company representing the company's insureds. The basis for the Board's conclusion that the employer-employee relationship necessarily creates unacceptable conflicts of interest are Canon 4, which requires total confidentiality, Canon 5, which demands independent professional judgment, and Canon 7, which requires zealous representation.[3] The opinion provides:

> In instances where an attorney is employed by an insurer to represent an insured the attorney is in the precarious position of having a potential, if not actual, conflict of interest. The attorney is bound by Disciplinary Rule 7–101(A) to represent client-insured zealously, and by DR 4–101 to preserve the confidences and secrets of the client-insured. There should be a full and complete disclosure of the possible effect of his representation on the exercise

---

**3.** Canon 4 states, "A lawyer should preserve the confidences and secrets of a client." Disciplinary rule 4–101 provides:

(A) "Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

(C) A lawyer may reveal:

(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.

(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

(3) The intention of his client to commit a crime and the information necessary to prevent the crime.

(4) Confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

(D) A lawyer shall exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a

client, except that a lawyer may reveal the information allowed by DR 4–101(C) through an employee.

Canon 5 states, "A lawyer should exercise independent professional judgment on behalf of a client." Under that canon, an ethical consideration provides:

The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.

*Id.* at EC 5–1. Furthermore, the Code provides, Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

*Id.* at DR 5–101(A).

(A) Except with the consent of his client after full disclosure, a lawyer shall not:

(1) Accept compensation for his legal services from one other than his client.

(2) Accept from one other than his client any thing of value related to his representation of or his employment by his client.

(B) A lawyer shall not permit a person who recommends, employs, or pays him to render legal services for another to direct or regulate his professional judgment in rendering such legal services.

*Id.* at DR 5–107.

Canon 7 states, "A lawyer should represent a client zealously."

of independent professional judgment and the client-insured should be given an opportunity to evaluate the need for representation free of any potential conflict and all doubts should be resolved against the propriety of representation.

.　　.　　.　　.　　.

There are few cases where some question does not arise during the confidential conferences between the attorney and the client-insured that *might* provide a conflict between the insured and the insurance carrier. Those situations can involve things such as the use of the vehicle or questions unrelated to the particular case at hand but which might [affect] whether or not the carrier would want to continue to carry that particular insured on its policy.

The opinion concludes that because the attorney is an employee of the insurer, the attorney will not be able to exercise independent judgment or preserve the confidences and secrets of the insured.

▪ The relationship of employer-employee obviously creates the potential for conflicts of interest. However, in the situation posed by the inquiry, it is not a potential conflict that is prohibited, but the "reasonable probability" of a real conflict. Tenn. R.Sup.Ct. 8, EC 5–2. The employment of an attorney by an insurer to represent the insured does not create the relationship of attorney-client between the insurer and the attorney, nor does that employment necessarily impose upon the attorney any duty or loyalty to the insurer which impairs the attorney-client relationship between the attorney and the insured or impedes the performance of legal services for the insured by the attorney. Where the employer is not also a client, a conflict will not occur unless the attorney is obligated by the terms or circumstances of employment to protect the interest of the employer even to the detriment of the insured.

▪ The Code prohibits any relationship between the attorney and the insurer, or any other person or entity, which impairs the attorney's complete loyalty to the client with regard to the performance for the client of the agreed legal services or with regard to any matter touching the attorney-client relationship between the attorney and the insured. The terms of the agreement between the insurer and the attorney whereby the attorney agrees to undertake the representation of the insured must respect the attorney-client relationship between the attorney and the insured. The relationship of employer-employee is not inflexible. Some of the usual characteristics incident to that relationship cannot exist between the insurer and the attorney representing an insured. The employer cannot control the details of the attorney's performance, dictate the strategy or tactics employed, or limit the attorney's professional discretion with regard to the representation. Any policy, arrangement or device which effectively limits, by design or operation, the attorney's professional judgment on behalf of or loyalty to the client is prohibited by the Code, and, undoubtedly, would not be consistent with public policy.

The Board designates several specific situations which may give rise to conflicts of interest and, therefore, require special care in providing for the insured's defense. They include situations where a defense is afforded under a reservation of rights, where there is a defense of alternative claims, one with coverage and the other with no coverage, where there is a defense of claims for damages in excess of the policy limits, and where the defense involves multiple insureds.

▪ The obligation to defend the insured under a contract of insurance obviously contemplates representation by counsel who can exercise professional judgment and devote complete loyalty to the insured regardless of the circumstances. The same loyalty is owed the client whether the attorney is employed and paid by the client, is a salaried employee of the insurer, or is an independent contractor engaged by the insurer. Compliance with the Code in all cases will be measured against the Code itself, rather than some variation of the "outside counsel" practice, which, depending upon the circumstances of the particular situation, may not conform to the requirements of the Code. Both the insurer and the attorney assigned implicitly represent to the insured in all situations that

the representation provided comports with the requirements of the Code.

Petitioners defend the use of employee-attorneys as an efficient and economical means of accomplishing the insurers' obligations to defend their insureds. Petitioners explain that the specialization and "institutionalization" of the bar which, according to the petitioners, make the economy and efficiency possible, necessitates that "the regulation of the profession must be founded on practical realities as they exist." If the import of petitioner's argument is that ethical considerations must be sacrificed for the sake of economy, that proposition is totally rejected. The loyalty and independent judgment required by the Code are absolute. They are essential to the integrity and accountability of the profession and the legal system. If the cost of legal representation is burdensome, as suggested by petitioners, the profession must look to reforms which do not threaten the foundation of the profession and the system of justice.

■ The conclusion that the Board erred in finding a conflict of interest implicit in the relationship stated in the opinion, is consistent with the Court's holding in *State v. Jones*, 726 S.W.2d 515 (Tenn.1987). In *Jones*, an ethics opinion banned all county attorneys from representing a criminal defendant if the defendant was being prosecuted by county officers.[4] In finding the opinion invalid, the Court stated,

> Ethics Opinion 83–F–41 is premised upon the assumption that the county attorney in every county of this State has an identical lawyer-client relationship with the sheriff and his deputies or that the mere title of county attorney creates the appearance of a conflict of interest that makes it impermissible under any circumstances for the county attorney to represent a criminal

defendant. We do not agree with either hypothesis.

. . . . .

All agree that Ethics Opinion 83–F–41 clearly and unambiguously bans all county attorneys, their partners and associates in the State of Tennessee from representing a criminal defendant, if the defendant is being prosecuted by county officers. We find that to be an overbroad interpretation of the Code of Professional Responsibility. Conflicts of interest, both actual and perceived, cannot be dealt with by such sweeping blanket pronouncements. There may well be counties in this State where, upon examination by the trial judge of the lawyer-client relationship between the county attorney and the sheriff or upon examination of the perception of the community of that relationship, disqualification of the county attorney would be necessary. But, unless and until such an adjudication is made upon an adequate factual record, each appointment should be examined and a determination made concerning whether any actual or perceived conflict of interest exists that would prejudice the defense of the case under consideration.

*Id.* at 520.

Most ethics committees and courts hold that the employment relationship does not, in and of itself, constitute a violation of the professional duties of attorneys. *See, e.g., King v. Guiliani*, 1993 WL 284462 (Conn.Super.1993); *Coscia v. Cunningham*, 250 Ga. 521, 299 S.E.2d 880 (1983); *In re Allstate Ins. Co.*, 722 S.W.2d 947 (Mo.1987). The Missouri Supreme Court has held that there is no difference between a corporation doing something through an employee and through an independent contractor. *In Re: Allstate Insurance Co.*, 722 S.W.2d 947 (Mo.1987).[5] An American Bar Association formal opinion states that the insurance company's obligation to defend an action brought by a third

---

4. The finding by the Court in *State v. Jones*, that an attorney who relies upon a formal ethics opinion nevertheless can be held in contempt of court for his refusal to act contrary to the opinion, is not relevant to the issue presented in the case under review.

5. The main authority disallowing the use of staff counsel is a North Carolina case, *Gardner v. North Carolina State Bar*, 316 N.C. 285, 341 S.E.2d 517 (1986). The North Carolina Supreme Court, construing a North Carolina statute, found that the use of staff counsel to represent an insurance company's insured constitutes the practice of law by a corporation.

person against the insured contemplates that the company will take charge of the defense, including the supervision of the litigation.

> The essential point of ethics involved is that the lawyer so employed shall represent the insured as his client with undivided fidelity.

ABA Comm. on Professional Ethics and Grievances, Formal Op. 282, p. 623 (1950).

The potential for conflicts incident to the employer-employee relationship obviously is not as great as where the attorney is engaged to represent both the insured and the insurer. Ethical Considerations 5–14 through 5–20 address the matter of multiple clients including situations where "a lawyer is asked to represent . . . an insured and his insurer. . . ." Even then, "[w]hether a lawyer can fairly and adequately protect the interests of multiple clients in these and similar situations depends upon an analysis of each case." Tenn.R.Sup.Ct. 8, EC 5–17. However, the issues raised by those relationships are not included in the inquiry under consideration and will not be further discussed in this opinion.

Because the opinion bases its finding upon the potential for conflict in the relationship of employer-employee rather than particular facts which demonstrate there is, in fact, a conflict of interest, it does not reflect a proper interpretation of the Code. The conclusion stated in the formal ethics opinion on this issue is, therefore, vacated.

4.

The second finding by the Board is that, Such an arrangement constitutes a lay corporation practicing law.

■ The unauthorized practice of law is a Class A misdemeanor and also subjects the offender to a civil action for recovery of treble the amount of compensation received. T.C.A. § 23–3–103(b) (1994). Consequently, the determination by the Board that the performance posed in the inquiry constitutes the unauthorized practice of law goes beyond the rendering of an opinion regarding ethical conduct by the petitioners. A more precise issue presented by the inquiry is whether the relationship posed was a violation of Canon 3,

Disciplinary Rule 3–101(A): "A lawyer shall not aid a non-lawyer in the unauthorized practice of law."

The formal ethics opinion provides that the arrangement posed in the inquiry,

> is close to a lay corporation practicing law. The insurance industry collects premiums from insureds and in return provides various services including providing an attorney to protect the insureds interest. The premium dollar charged factors in the cost of doing business. For a lay corporation to charge a premium based upon legal services but to then turn around and use company employees on a salary to provide these services is close if not akin to fee splitting between professional and layman. If this were permitted, the other side of the coin would permit a lay corporation to hold itself out as a tort recovery clinic and then hire employee attorneys to do the work, pocketing the attorney fees and paying the lawyers a salary.

The significant factor found by the Board to cause a violation of Canon 3 was "fee-splitting." The inquiry and the Board's opinion, which assumes no facts other than those stated in the inquiry, do not include sufficient specific facts on which to determine if there is a fee-splitting arrangement. The relationship itself does not establish the practice of fee-splitting. As noted in the ethics opinion, the cost of defending claims against insureds is an underwriting factor which affects the premiums charged for the insurance. However, the payment of a salary for services rendered by the attorney, rather than a fee based on services rendered, does not *per se* constitute fee-splitting.

The Court has previously ruled that the hiring of outside counsel by insurance companies does not necessarily constitute the unauthorized practice of law by a corporation. *Hardware Mut. Casualty Co. v. Higgason,* 175 Tenn. 357, 379, 134 S.W.2d 169, 177 (1939).

> The furnishing of legal services to an insured by a liability insurance company has generally been found not to constitute the unauthorized practice of law because of the identity or community of financial in-

terest between insured and insurer in defending the claim and because of the insurer's contractual obligation to defend the insured at the insurer's expense. *See* Formal Opinion 282 (1950), and *In re Proposed Addition to the Additional Rules Governing the Conduct of Attorneys in Florida,* 220 So.2d 6 (Fla.1969).

ABA Informal Opinion 1402 (1977).

The Missouri Supreme Court's opinion in *In Re: Allstate Insurance Co.,* 722 S.W.2d 947 (Mo.1987) construed Missouri statutes in determining that the practice under review did not constitute the practice of law by a lay corporation. That court emphasized the fact that the services could properly be rendered by outside counsel hired and paid by the insurance company.

The issue posed by the inquiry was addressed in California State Bar Formal Opinion 1987–91, 1987 WL 209707 (1988), which concluded:

> In-house counsel for an insurer may represent insureds in litigation without violating the prohibition against aiding the unauthorized practice of law set forth in Rule 3–101(A). However, the attorneys must ensure that the insurance company does not control or interfere with the exercise of professional judgment in representing insureds, that any fees are not split with the insurance company or any other third parties, that case[s] involving conflicts of interest are referred to outside counsel, and that the firm name used by in-house counsel is not false, deceptive, or misleading.

That opinion also states:

> However, the mere fact that the lawyers are employees of [an] Insurance Company does not necessarily compromise the attorney's independent professional judgment.

As stated with regard to the conflict of interest issue, the specific facts of each situation must be examined to determine if the attorney is aiding a non-attorney in the practice of law. The mere showing of the relationship of employer-employee, without a definition of the duties, loyalties, prerogatives, and interests of the parties, is not a sufficient basis on which to conclude that the attorney-employee is aiding a non-attorney in the practice of law.

The opinion of the Board on this issue is, therefore, vacated.

### 5.

The last conclusion reached by the ethics opinion is that "[t]he holding out of an in-house attorney employee as a separate and independent law firm constitutes an unethical and deceptive practice." The Court affirms this finding by the Board.

Disciplinary Rule 2–101 states:

> (A) A lawyer shall not, on behalf of himself, his partner, associate or any other lawyer affiliated with him or his firm, use or participate in the use of, any form of public communication containing a false, fraudulent, misleading or deceptive statement or claim. A statement or claim is false, fraudulent, misleading or deceptive if it:
>
> (1) Contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement, considered as a whole, not materially misleading;....

Disciplinary Rule 2–102(C) presently states,

> A lawyer shall not hold himself out as having a partnership with one or more other lawyers unless they are in fact partners.

*See also* Tenn.R.Sup.Ct. 8, EC 2–11, EC 2–13, and DR 2–102.

Even though, as discussed above, the relationship between an insurer-employer and an attorney-employee does not necessarily prevent the attorney from devoting to the insured-client the loyalty and independent judgment required by the Code, an attorney-employee is not "a separate and independent law firm." The representation that the attorney-employee is separate and independent from the employer is, at least, false, misleading, and deceptive. It may be fraudulent, depending upon the circumstances under which the representation is made.

The petitioners admit that the practice they advocate gives the public the impression that they are engaged in the general practice

of law as partners or as sole practitioners. However, they would justify the misrepresentation on the ground that general identification of the attorney-employee with the insurer-employer must be avoided and, public disclosure of the real relationship between the insurer and the attorney would serve no useful purpose. The prohibition contained in the Code is not limited to false, misleading, fraudulent, and deceptive representations *which are demonstrated to be harmful,* nor will the Code be construed so narrowly on this important principle. And further, false, misleading, fraudulent, and deceptive representations are by their very nature harmful to the profession, whose credibility is dependent upon its integrity.

This practice found by the Board to violate the Code was criticized by the Supreme Court of New Jersey, as follows:

> Such partnership implies the full financial and professional responsibility of a law firm that has pooled its resources of intellect and capital to serve a general clientele. The partnership arrangement implies much more than office space shared by representatives of a single insurer. Put differently, the designation "A, B, & C" does not imply that the associated attorneys are in fact employees, with whatever inferences a client might draw about their ultimate interest and advice. The public, we believe, infers that the collective professional, ethical, and financial responsibility of a partnership-in-fact bespeaks the "kind and caliber of legal services rendered."

*In Re Weiss, Healey & Rea,* 109 N.J. 246, 536 A.2d 266, 269 (1988) (footnote omitted).

Accordingly, the finding of the Board of Responsibility, that the holding out of an in-house attorney-employee as a separate and independent law firm constitutes an unethical and deceptive practice, is affirmed.

### 6.

The first and second findings set forth in the Board's formal ethics opinion are vacated. The third finding by the Board is affirmed, and will become effective 120 days after the date on which this decision is filed.

Costs are taxed against the petitioners equally.

ANDERSON, C.J., DROWOTA and BIRCH, JJ., and O'BRIEN, Special Justice, concur.