FILED
**Mar 22, 2023**
**10:55 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Anvil Nelson, Jr. | ) | Docket No. 2021-06-1121 |
| | ) | |
| v. | ) | State File No. 26092-2021 |
| | ) | |
| QVS, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard February 22, 2023 |
| Compensation Claims | ) | via Microsoft Teams |
| Kenneth M. Switzer, Chief Judge | ) | |

---

### Affirmed and Remanded

---

In this appeal, the employer contends the trial court erred when it disqualified counsel from joint representation of the employer and its insurer and ordered the insurer to retain independent counsel to represent the employer. The alleged injured worker, who is also the owner and president of the employer, filed a motion seeking to disqualify defense counsel altogether or, in the alternative, to compel the retention of independent counsel for the employer, asserting there is a concurrent conflict of interest. The court concluded a conflict existed, disqualified counsel from representing the employer, and ordered the insurer to hire independent counsel to represent the employer. The employer has appealed. Having reviewed the record on appeal, we affirm the trial court's order disqualifying counsel from representing the employer and remand the case.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Judge Meredith B. Weaver joined. Presiding Judge Timothy W. Conner filed a separate opinion concurring in part and dissenting in part.

Adam C. Brock-Dagnan, Knoxville, Tennessee, for the employer-appellant, QVS, Inc.

Steven Fifield, Nashville, Tennessee, for the employee-appellee, Anvil Nelson, Jr.

### Factual and Procedural Background

Anvil Nelson, Jr. ("Employee"), owner and President of QVS, Inc. ("Employer"), asserts he sustained injuries arising out of and in the course and scope of his employment

when he tripped over a pallet and fell, landing on his face.[1]  Employee was transported to Erlanger Hospital where he received medical treatment and, two days later, underwent multi-level cervical spine fusion surgery.[2]  Employer's workers' compensation insurer, Wesco Insurance Company ("Insurer"), denied the claim and provided no workers' compensation benefits.

On February 1, 2022, Employee filed a petition for workers' compensation benefits, asserting his claim was wrongfully denied.  He requested medical treatment, reimbursement for and payment of medical bills, and temporary total disability benefits. The day after the trial court entered an order setting discovery deadlines, Employee forwarded correspondence to Insurer's third-party administrator, AmTrust North America, "in [his] capacity as the President and Owner of QVS, Inc., not in [his] capacity as the injured worker."  In that correspondence, he asserted it was Employer's position that, "since the date of the injury, March 3, 2021, . . . this claim should be accepted."  Employee further stated:

> I understand that you disagree and have denied the claim.  I believe this is a clear conflict between QVS, Inc. and AmTrust North America/Wesco Insurance Company.  I am formally requesting that conflict counsel be hired and assigned to represent QVS, Inc. in the . . . claim.  I am not sure why this has not already been done, so I request that conflict counsel be brought in as quickly as possible after your receipt of this letter.

On October 24, Employee propounded requests for admission to Insurer and AmTrust North America, as well as requests for admission to Employer.[3]  On October 26, counsel for Insurer confirmed receipt of Employee's correspondence requesting conflict counsel and provided the following response:

> I am in receipt of your client's request for conflict counsel.  However, after examining QVS, Inc.'s policy language and communicating with my client, we have elected to move forward with [Employee's] deposition *and* independent medical examination.  I have enclosed a notice of deposition and will provide you with an examination date within the next few business days.

---

[1] The record indicates the corporation was dissolved at some point after the alleged work-related accident.

[2] There are no medical records contained in the record; therefore, we glean the factual history of the claim from the documents included in the technical record.

[3] Thus, Employee, in his capacity as the worker alleging an injury, served requests for admission upon Employer, for which he is the purported corporate representative.

In the letter, Insurer's counsel also assured Employee that his client would "keep an open mind" regarding Employee's request for conflict counsel and "reconsider said request upon new information."

On November 1, Insurer's counsel filed a motion to quash Employee's requests for admission, contending, in part, that Employer and Insurer are "indistinguishable" and that Employee's discovery requests were intended "to create a conflict of interest where one does not exist." On November 4, Employee, in his capacity as both Employee and owner of Employer, filed his response in opposition to Insurer's motion to quash, asserting that the requests for admission propounded were "proper under the Rules of Civil Procedure, are relevant to the issues involved in this litigation, and are in no way frivolous."

That same day, Employee filed a motion to disqualify defense counsel entirely or, in the alternative, to compel the Insurer to retain independent counsel for Employer. In his motion, Employee argued that a conflict existed because Insurer and/or its third-party administrator had denied his claim, contrary to the wishes of Employer. Employee further argued that Insurer had refused to provide independent counsel when Employee, acting in his capacity as Employer, lodged a written request.[4] Employee attached the Rule 72 Declaration of Marco Sous, an individual who was working alongside Employee when he was injured, as one of the exhibits to his motion. In his affidavit, Mr. Sous stated that Employee "had been fine" prior to the fall and that he "observed [Employee's] left foot trip over a pallet causing him to fall face down to the concrete floor." Mr. Sous stated, "I specifically remember that [Employee] tripped over the pallet. Stated another way, the pallet caused [Employee's] fall and injury." Mr. Sous asserted that, when he was interviewed about the incident, he told the insurance adjuster that he witnessed Employee trip over the pallet and fall face down to the floor.

The Rule 72 Declaration of Employee was also attached as an exhibit to his motion, wherein he stated that he was the owner and president of QVS, Inc., in addition to being a covered employee under his workers' compensation policy. Employee asserted that in his capacity as owner and president of the company, counsel for Insurer was also acting as his attorney and "despite being my lawyers, no [attorney] has attempted to obtain any information from [Employer] or made any effort to involve the company in any aspect of the claim, despite purporting to represent the Employer." Employee further stated that counsel had noticed him to a deposition and was working "solely for the benefit of its other clients in this matter." Employee reiterated his request for conflict counsel and confirmed he had not "signed any written waiver of the ongoing conflict of interest or provided written consent to be represented by [counsel for Insurer] while the conflict exists."

---

[4] Counsel for Insurer asserted that its initial decision not to provide conflict counsel was based upon policy language. During oral argument, counsel clarified that Insurer had provided only portions of the policy language at the time the decision was made; however, neither the policy nor relevant excerpts from the policy were offered into evidence.

In its response to Employee's motion, Insurer asserted that no conflict existed. In support of its position, counsel argued that Employer is a "distinct and separate entity from Employee himself; therefore [counsel] represents QVS, Inc., *not* Employee." In a reply brief, Employee agreed that he and his company are two separate legal entities but asserted that fact was not determinative of whether a conflict existed. Employee noted that he is the owner and president of the company, the "main point of contact . . . to obtain any and all information relevant to this claim . . . [and] will likely serve as the corporate representative for most of the issues in his claim." Further, Employee asserted he paid his workers' compensation insurance premiums, oversaw all employees of his company, and "in his role as the owner, president, and representative of [Employer] is intricately entwined [with] the company."

Employee attached a Rule 72 Declaration of attorney Cliff Wilson as an exhibit to his reply brief. In his Rule 72 Declaration, Mr. Wilson stated that he has practiced law in the state of Tennessee since 1983 and was selected by the Tennessee Supreme Court to serve two consecutive three-year appointments as a panel member of the Tennessee Board of Professional Responsibility. Mr. Wilson averred he was familiar with the issues in this particular claim, as well as the ethical obligations of defense attorneys. Mr. Wilson also stated that he was familiar with the rules of professional conduct related to conflicts of interest. Mr. Wilson provided an opinion that counsel's joint representation of Employer and Insurer "appears . . . to be a conflict of interest within the meaning of PRC 1.7." Mr. Wilson stated that "[Employer] through its owner [Employee], requested conflict counsel, which in my opinion should have been provided by [Insurer] and/or Third-Party Administrator." He concluded by stating, "Even if this situation is not a Rule 1.7 conflict, in my opinion, the appearance of impropriety is still present where the Employer's own lawyer seeks to depose [Employee] as an adverse witness and subject him to a medical exam designed to support the denial of his claim against the wishes of the Employer."

On November 15, the trial court issued an order denying Insurer's motion to quash Employee's requests for admission. On November 28, Employee sought a protective order to postpone his deposition, asserting that his pending motion regarding defense counsel's alleged conflict of interest should be fully resolved prior to his deposition.[5]

On November 29, the trial court issued an order disqualifying Insurer's counsel from representing Employer, noting that, under the circumstances of this case, the interests of Employee and his company "are intricately intertwined" and "[o]ne cannot serve two masters." Further, the court concluded that "[Employer's] corporate representative, [Employee], has interests directly adverse to [Insurer's] interests." The court noted that Employee paid premiums for Employer's workers' compensation insurance coverage and, as an officer, did not elect to be excluded from coverage. In addition, the court observed

---

[5] On December 6, the trial court, noting Employer did not file a response, granted Employee's motion for a protective order.

4

that the interests of the corporate representative for Employer were "directly adverse to the carrier's interests" and noted that counsel "cannot simultaneously contend that the claim is compensable, a position favorable to [Employee] and the corporate representative, and defend against the claim as noncompensable, a position favorable to [Insurer]." In addition, Employer had "not sought informed consent, in writing, from each affected client." Thus, the court concluded that a concurrent, actual conflict of interest exists and that Insurer's attorney and his firm should be disqualified from representing Employer. The court did not order counsel's complete disqualification but instead ordered Insurer to hire independent counsel to represent Employer. Insurer has appealed.

**Standard of Review**

"A trial court's ruling on attorney disqualification, or the vicarious disqualification of that attorney's firm, will be reversed only upon a showing of an abuse of discretion." *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001). A trial court abuses its discretion when it causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). The abuse of discretion standard "does not permit an appellate court to substitute its judgment for that of the trial court." *Id.* Moreover, pursuant to the abuse of discretion standard, "the appellate court should presume the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." *Id.* at 105-06. The standard we apply in reviewing the trial court's decision also presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022).

**Analysis**

Insurer asserts the trial court erred by concluding there was a conflict of interest arising from counsel's joint representation of Employer and Insurer. In its brief on appeal, Insurer raises two issues, which we restate as follows: (1) whether the trial court has authority to issue an order of disqualification, and (2) whether Employee failed to prove a concurrent conflict of interest exists. Conversely, Employee contends Insurer's argument regarding subject matter jurisdiction is waived because it was not raised in the trial court or, if it is not waived, is without merit. Employee also asserts the trial court did not abuse its discretion by concluding a concurrent conflict of interest exists.

*Authority of Trial Court*

Insurer asserts the trial court does not have authority to enter an order of disqualification because it is under the purview of an administrative agency in the executive branch of government and is not part of the judicial branch. In its brief, Insurer argues that "[t]his distinction is crucial" because licensing and regulation of attorneys practicing law

5

lies within the inherent authority of the Tennessee Supreme Court and the judicial branch of government. Therefore, Insurer contends, the trial court's order is void because it does not possess subject matter jurisdiction over the disqualification of an attorney or its firm. Employee, on the other hand, argues that this issue is either waived because Insurer failed to raise it at trial or, if it is not waived, is without merit. Although the issue of subject matter jurisdiction cannot be waived, *see Nickerson v. Knox Cnty. Gov't*, No. 2019-03-0559, 2020 TN Wrk. Comp. App. Bd. LEXIS 18, at *3 (Tenn. Workers' Comp. App. Bd. Apr. 17, 2020), we agree with Employee that this issue is without merit under the circumstances of this case.

Tennessee Supreme Court Rule 8, Rule of Professional Conduct 8.5(b)(1) states that a "tribunal" can consider issues raised under the Rules of Professional Conduct in any matter pending before it. Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.0(m) defines "tribunal" as follows:

> "Tribunal" denotes a court (including a special master, referee, judicial commissioner, or other similar judicial official presiding over a court proceeding), an arbitrator in a binding arbitration proceeding, or a legislative body, *administrative agency, or other body acting in a adjudicative capacity*. A legislative body, administrative agency, or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.

(Emphasis added.) Hence, if the Court of Workers' Compensation Claims is a "tribunal" exercising adjudicative functions, it is instructed by the Supreme Court to apply the Rules of Professional Conduct in any matter pending in that court.

In his brief on appeal, Employee argues that "[n]o action related to the workers' compensation claim could be filed in a Circuit or Chancery Court, nor could a party file a petition directly before the Tennessee Supreme Court seeking disqualification [of an attorney in a case pending in the Court of Workers' Compensation Claims]. The position of the Appellant leaves the Rules of Professional Conduct toothless and unenforceable." It is apparent from the plain language of Rule 1.0(m) that the Court of Workers' Compensation Claims falls squarely within the definition of a tribunal exercising adjudicative authority. Further, the Rules of Professional Conduct are to be applied to any matter before a tribunal, and the Court of Workers' Compensation Claims has exclusive jurisdiction over all workers' compensation claims. Tenn. Code. Ann. § 50-6-237.

Moreover, orders issued by the Court of Workers' Compensation Claims are appealable to the Tennessee Workers' Compensation Appeals Board and, ultimately, may be appealable to the Tennessee Supreme Court. *See* Tenn. Code Ann. § 50-6-225. Thus, the Supreme Court can exercise judicial review of such decisions. In short, we conclude

that the Court of Workers' Compensation Claims, as a tribunal performing adjudicative functions, has the authority to address issues arising under the Tennessee Rules of Professional Conduct. Specifically, we conclude the Court of Workers' Compensation Claims possesses subject matter jurisdiction over the disqualification of an attorney or the attorney's firm and is able to weigh the evidence and arguments of parties, make a determination as to whether a concurrent conflict exists, and issue an order of disqualification, if necessary.

*Conflict of Interest*

The second issue raised on appeal is whether Employee failed to prove that a concurrent conflict of interest exists. Rule 1.7 of the Rules of Professional Conduct provides the framework for our analysis regarding legal representation when there is an asserted conflict of interest. Rule 1.7 states:

(a)   Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1)   the representation of one client will be directly adverse to another client; or

(2)   there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Subsection (b) delineates certain circumstances where an attorney *may* represent a client, notwithstanding a concurrent conflict of interest. An attorney may concurrently represent more than one client under the following circumstances:

(1)   the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)   the representation is not prohibited by law;

(3)   the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)   each affected client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, RPC 1.7.

In *Moody v. Hutchison*, 247 S.W.3d 187, 200 (Tenn. Ct. App. 2007), the Tennessee Court of Appeals explained that "[a]n actual conflict of interest is usually defined in the context of one attorney representing two or more parties with divergent interests." The Court then explained:

> A test for determining a disqualifying conflict in that situation is whether the attorney "made a choice between possible alternative courses of action [that were] helpful to one client but harmful to the other." The term has been described as "a situation in which regard for one duty tends to lead to [the] disregard of another." In *Ford v. Ford*, 749 F.2d 681, 682 (11th Cir.), cert. denied, 474 U.S. 909, 106 S. Ct. 278, 88 L. Ed. 2d 243 (1985), the court declared a conflict of interest when an "attorney was placed in a position of divided loyalties." Once an actual conflict of interest is shown, disqualification is the appropriate remedy.

*Id*. at 200.

The Tennessee Supreme Court also addressed conflicts of interest in *In re Youngblood*, 895 S.W.2d 322 (Tenn. 1995). In that case, the Tennessee Board of Professional Responsibility had issued Formal Ethics Opinion 93-F-132, which addressed the ability of in-house attorneys hired by an insurer to represent the interests of that insurer's insured entities, and the Supreme Court was asked to address the validity of that opinion. In rejecting the notion that an in-house attorney employed by an insurer had an inherent conflict in representing an insured entity of that insurer, the Supreme Court explained, "the relationship of employer-employee obviously creates the potential for conflicts of interest. However, in the situation posed by the inquiry, *it is not a potential conflict that is prohibited, but the "reasonable probability" of a real conflict.* Tenn. R. Sup. Ct. 8, EC 5-2." *Id.* at 328 (emphasis added). The Court then discussed the general circumstances of an insurer hiring an attorney to represent an insured:

> The employment of an attorney by an insurer to represent the insured does not create the relationship of attorney-client between the insurer and the attorney, nor does that employment necessarily impose upon the attorney any duty or loyalty to the insurer which impairs the attorney-client relationship between the attorney and the insured or impedes the performance of legal services for the insured by the attorney. Where the employer is not also a client, a conflict will not occur unless the attorney is obligated by the terms or circumstances of employment to protect the interest of the employer even to the detriment of the insured.

*Id.* This rationale addresses typical liability cases where an insurance contract obligates an insurer to defend a claim brought against its insured. The issue becomes more complicated in workers' compensation cases because Tennessee Code Annotated section 50-6-102(11)

places the insurer in the same shoes as the employer. Therefore, the "reasonable probability of a real conflict" becomes much more acute in workers' compensation cases when the insurer and the insured have diverging interests.

The Supreme Court in *Youngblood* then explained, "Any policy, arrangement or device which effectively limits, by design or operation, the attorney's professional judgment on behalf of or loyalty to the client is prohibited by the Code, and, undoubtedly, would not be consistent with public policy." *Youngblood*, 895 S.W.2d at 328. Thus, in circumstances where a workers' compensation insurer is contractually obligated to retain an attorney to defend an insured company in a workers' compensation case, the attorney's primary ethical duty is to the employer, but the term "employer" includes *both* the company *and* the insurer. Tenn. Code Ann. § 50-6-102(11). When the interests of the company and its insurer diverge, there is a "reasonable probability of a real conflict." *Youngblood*, 895 S.W.2d at 328.

Here, Insurer asserts Employee failed to prove that a concurrent conflict of interest exists. In support of its assertion, Insurer contends that because Employer is a corporation, a legal entity separate from its corporate officers, the argument that counsel cannot represent both Insurer and Employer "runs contrary to a basic understanding of corporate law, as [Employer] is a distinct and separate entity from Employee himself." Employer also contends that a company's president is "still an employee for purposes of Tennessee Workers' Compensation Law. Therefore, unless Employee presented sufficient evidence demonstrating that he, in his capacity as the president, opted out of the workers' compensation insurance policy agreement between [Employer] and [Insurer] . . . Employee exists exclusively as an employee, as defined under [Tennessee Code Annotated section] 50-6-102(12)(1)(a)." In sum, Insurer argues that Employee "conflates his personal disagreement [with the denial of his claim] with a conflict of interest."

Conversely, Employee asserts the trial court did not abuse its discretion by finding a conflict of interest exists. In response to Insurer's argument that Employer, as a corporation, is a distinct and separate legal entity, Employee asserts that, as the President and owner of Employer, he "certainly acts for [Employer]" and "evidence of [Employer's] interests must come from [Employee]." Moreover, Insurer presented no evidence rebutting the assertion that Employee is also the corporate representative with authority to speak for the corporation.

Employee argues the trial court did not apply an incorrect legal standard, but instead correctly relied upon Rule 1.7 of the Tennessee Rules of Professional Conduct in its analysis. Moreover, Employee asserts there was no abuse of discretion because the trial court's ruling was limited in scope and only disqualified counsel from representing Employer. Finally, Employee contends the trial court's logic was sound, and its assessment

of evidence, including the Rule 72 Declarations of attorney Cliff Wilson and Employee, was not clearly erroneous.

In this case, it is clear that Employee occupies more than one role: he is the alleged injured worker and was the owner and President of Employer at the time the incident occurred. While both parties agree that Employee and Employer are two separate legal entities, Employee, in his capacity as President and owner of the company, has asserted his role as corporate representative and taken a position on behalf of Employer that is adverse to that of Insurer. Employee also asserts that counsel for Insurer has made no effort to communicate with Employer, although he concedes this is likely due to Employee's being represented by counsel in his capacity as the injured worker. This fact further highlights the existence of a conflict: Insurer's counsel cannot communicate with Employer's designated representative because that representative is also the injured worker, who is represented by counsel. In addition, counsel for Insurer intends to obtain a medical examination and depose Employee, who is also the corporate representative for his client. This is clearly a case in which regard for one duty can lead to the disregard of another, and counsel will be placed in a position of divided loyalties. Under the circumstances presented, we cannot conclude that the trial court abused its discretion by finding that a concurrent, actual conflict of interest exists and disqualifying counsel from joint representation of both Insurer and Employer.[6]

## Conclusion

For the foregoing reasons, we affirm the trial court's order disqualifying counsel from representing Employer, and we remand the case. Costs on appeal are taxed to Insurer.

---

[6] In his separate opinion, our colleague addresses whether the trial court had the authority to order Insurer to retain and pay for independent counsel to represent Employer. We agree in part with his assessment that the record is lacking in legal or factual support regarding this issue. We conclude, however, that because this issue was not raised by either party on appeal, we cannot address it. Thus, we offer no opinion as to whether the Court of Workers' Compensation Claims exceeded its authority in ordering Insurer to hire conflict counsel.

10

| | | |
|---|---|---|
| Anvil Nelson, Jr. | ) | Docket No. 2021-06-1121 |
| | ) | |
| v. | ) | State File No. 26092-2021 |
| | ) | |
| QVS, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard February 22, 2023 |
| Compensation Claims | ) | via Microsoft Teams |
| Kenneth M. Switzer, Chief Judge | ) | |

---

**Opinion Concurring in Part and Dissenting in Part**

---

Timothy W. Conner, J., concurring in part and dissenting in part.

Although I agree with the majority opinion's rationale concerning the conflict issue, I write separately to address what I view as a deficiency in the record and a lack of evidentiary support for part of the trial court's order. Upon review of the record on appeal, I am unable to find any evidence offered to the trial court that would support a contractual or legal obligation on the part of Insurer to retain independent counsel for Employer in a conflict situation. Employee has cited no common law precedent addressing an insurer's obligation to retain independent counsel in a conflict situation absent a specific provision in the insurance contract.[1] Moreover, neither party has addressed whether the Court of Workers' Compensation Claims has the authority to review the terms of a workers' compensation insurance contract and interpret its provisions.[2] Therefore, given the current lack of relevant evidence on this issue, I would reverse the portion of the trial court's order requiring Insurer to retain and pay for independent counsel.

---

[1] I further note that Tennessee Code Annotated section 23-3-103(a) and Tenn. Comp. R. and Regs. 0800-02-21-.04(1)(c) mandate that a corporation "be represented by a licensed attorney in the court of workers' compensation claims and the workers' compensation appeals board." As we have explained previously, a "corporation cannot practice law, cannot represent itself in the Court of Workers' Compensation Claims and cannot seek to introduce evidence or examine a witness through a 'duly authorized representative.'" *Higgins v. Big K Food Market & Liquors, Inc.*, No. 2014-01-0007, 2014 TN Wrk. Comp. App. Bd. LEXIS 3, at *11-12 (Tenn. Workers' Comp. App. Bd. Dec. 8, 2014). Hence, in my opinion, if there is no contractual or legal obligation for Insurer to retain and pay for independent counsel, that obligation would fall on the corporation.

[2] Given that this issue was not raised in the context of this appeal, I offer no opinion concerning whether the Court of Workers' Compensation Claims can review and rule on the terms of a workers' compensation insurance contract.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Anvil Nelson, Jr. ) | Docket No. 2021-06-1121 |
| ) | |
| v. ) | State File No. 26092-2021 |
| ) | |
| QVS, Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | Heard February 22, 2023 |
| Compensation Claims ) | via Microsoft Teams |
| Kenneth M. Switzer, Chief Judge ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 22nd day of March, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Adam C. Brock-Dagnan | | | | X | acbrock-dagnan@mijs.com telett@mijs.com |
| Steven Fifield | | | | X | steven@rockylawfirm.com connie@rockylawfirm.com |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov