Jackie R. DUNN, Plaintiff–Appellant,

v.

MOTO PHOTO, INC., Mike Pinto, and
Tex Monahan, Defendants–
Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 27, 1991.

Application for Permission to Appeal
Denied by Supreme Court
March 23, 1992.

Lee Ofman, Barrett and Ofman, Franklin, for plaintiff-appellant.

Douglas Fisher and Mark S. Beveridge, Howell, Fisher & Branham, Nashville, for Moto Photo, Inc. and Mike Pinto.

Charles Galbreath, Nashville, for Tex Monahan.

## OPINION

TODD, Presiding Judge.

The plaintiff, Jackie R. Dunn, has appealed from the action of the Trial Court in directing a verdict in favor of the defendants, Moto Photo, Inc., Mike Pinto and Tex Monahan, at the conclusion of plaintiff's proof.

On appeal, plaintiff presents two issues for review as follows:

I. Whether or not the Trial Court properly granted the defendant's motion for directed verdict at the conclusion of the plaintiff's proof, holding that plaintiff failed to establish proof of serious mental injury.

II. Whether or not the Trial Court properly granted the defendant's motion for directed verdict at the conclusion of the plaintiff's proof, holding that plaintiff failed to prove that her picture was distributed to a sufficient amount of people to establish an invasion of privacy.

The Trial Judge did not file a memorandum opinion or state reasons for its ruling in its judgment, but the transcript contains the following oral statement:

THE COURT: This is a complex case. It is the Court's opinion that the plaintiff has sued the defendant in tort on two causes, invasion of privacy and outrageous conduct, and I'm going to deal with them individually.

The Court is going to find that recognizably there are four distinct kinds of invasion of privacy; that the plaintiff has alleged a public disclosure of private fact. Absence of breach of conduct (sic), confidential relationship or fiduciary relationship, the Court is going to hold that a communication to a single individual or small group of people will not give rise to this liability.

In this case there is no evidence of breach of contract express or implied, no evidence of breach of trust or confidential relationship, and therefore I am going to grant a directed verdict in the cause of action for invasion of privacy.

The Court is troubled by the second cause of action. I think that the law in the State of Tennessee is very unclear on outrageous conduct. I think that our Supreme Court in the Swallows case has said that the injury must result—or the action must result in serious mental injury.

This Court is going to find that this is an extremely high standard for this cause of action. To quote Section 46 of the Statement of Torts which articulates the duty of a Judge and a jury, it is the duty of this Court to determine if serious enough injury could be found, and therefore the other duty must be determined by the jury, if it exists.

Based on this high standard, this Court is going to grant the defendants a directed verdict on the tort of outrageous conduct.

The judgment of the Trial Court states simply:

... After considering the motions, the court concluded that each motion for a directed verdict was well-taken. Accordingly the court directed the entry of a verdict in behalf of each defendant and dismissed the jury.

This Court must consider the issues to be whether the evidence of plaintiff, viewed in the light most favorable to plaintiff, is sufficient to support a verdict for the plaintiff. *City of Columbia v. CFW Constr. Co.,* Tenn.1977, 557 S.W.2d 734; *Neff v. Southeastern Salvage Co.,* Tenn.App.1985, 694 S.W.2d 311; *Cude v. Culbertson,* 30 Tenn. App. 628, 209 S.W.2d 506 (1948).

Viewed in the light most favorable to plaintiff, her evidence shows the following facts:

During October, 1988, plaintiff worked as a cocktail waitress for Stockyard Restaurant. She was "seeing" a travelling salesman named Ernie Bergman. In the third or fourth week in October, 1988, she prepared dinner for Bergman at her home. After dinner, plaintiff and Bergman retired to her bedroom for "sexual expression". Plaintiff changed into a "teddie" and Bergman took 3 or 4 photographs of plaintiff in various positions on the bed.

Plaintiff took the exposed film to Moto Photo, Inc., for developing. There was no discussion regarding privacy of the contents of the film. Plaintiff saw the machine used for developing and was aware that the film and resulting pictures would be handled and packaged by employees who would see them. Plaintiff requested prompt development of the film in order to show the pictures to Bergman before he left town.

When plaintiff returned for the developed pictures, she was informed by an employee of Moto Photo, Inc., that the pictures could not be developed and there would be no charge. The film was returned to plaintiff and was discarded by her.

Monahan played Santa Claus at Moto Photo, Inc., on December 18, 1988, as an accommodation to a friend who was assistant manager. While at Moto Photo, Monahan requested Pinto, an employee of Moto

Photo, Inc., to show him some "wild pictures". Pinto produced a "smut book" containing pictures among which was one which Monahan recognized as plaintiff. He told Mike Pinto that the picture was of a fellow employee at Stockyard Restaurant and that he wished to borrow the picture to play a joke and Pinto said, "Okay". The picture was never shown to Pinto. The picture showed one of plaintiff's breasts exposed.

Monahan and plaintiff had been friends for some time. He had assisted her in obtaining employment at Stockyard Restaurant and she requested him to arrange dates for her with patrons of the restaurant.

Monahan showed the picture to "some of the girls" who worked at Stockyard Restaurant and to plaintiff. Plaintiff asked for the picture, but Monahan replied that he was obligated to return it to Moto Photo, Inc.

Plaintiff testified that the experience of having her picture shown to others caused her loss of sleep, fear and weeping at work for which she consulted a physician and took prescription medicine for anxiety.

Plaintiff also testified that she has been a model since 1983, that she has been photographed in intimate attire, that these pictures are in her portfolio which she shows to people in order to demonstrate her charms to get work, that she was not humiliated by showing her charms to other people as it is a part of modeling.

Plaintiff also testified that she had a breast enlargement by a cosmetic surgeon and posed in a bathing suit for a picture which was included in his advertisements.

Plaintiff also testified that she had posed for professional photographers for a number of years.

■ Plaintiff insists first that the Trial Court erred in dismissing her suit for outrageous conduct on the ground that no serious damage was proved.

■ The law recognizes and protects the right to emotional tranquility, but where recovery is sought for mental or emotional

disturbance alone, unconnected with any independently actionable tort or with contemporaneous or consequential objectively ascertainable injury, the conduct complained of must have been outrageous and serious mental injury must have resulted therefrom. *Swallows v. Western Electric Co., Inc.,* Tenn.1976, 543 S.W.2d 581.

In *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270 (1966), the Trial Court sustained a demurrer (motion to dismiss) to a declaration (complaint) which alleged that the plaintiff had suffered an aggravation of a previous nervous condition resulting in headaches from the efforts of defendant by telephone and mail to collect a debt which had been satisfied. The Supreme Court affirmed the dismissal and said:

The question raised by the demurrer in this particular case is whether the law recognizes and protects a right to emotional tranquility where recovery is sought for mental or emotional disturbance alone, unconnected with any independently actionable tort or with any contemporaneous or consequential objectively ascertainable injury.

As children we were taught that it was "wrong" to strike another person. We understood this because we were "hurt" when someone struck us. Similarly we were taught that good manners and decency dictated that we refrain from intentionally "hurting someone's feelings." What we are dealing with in the present case is an extension of this second fundamental principle of interpersonal relationships. We now know as adults that the law protects persons from being "struck" in the sense that we perceive the striking through our preceptory sense of touch and the striking is of such a degree that we are "hurt". Does the law, however, protect persons when they are "struck" in the sense that the "striking" is perceived through a sensory mechanism other than that of touch?

Memory and empathy tell us that the "hurt" perceived through sensory media other than that of touch may be just as painful if not more so that the "hurt" perceived by the tactile sense. Moreover, physicians tell us that the consequences of invasions of the person accomplished through the preceptory media of sight and sound may be *as* damaging, if not *more* damaging than invasions of the person accomplished through the sense of touch.

Though the law has long recognized and protected the interest in being free from unpermitted touchings by others, it has been slow to recognize and protect the interest in being free from "mental" interference, such being characterized as "mental" because of the sensory capacity utilized to accomplish the hurt and because there is no objectively ascertainable injury.

Because we personally know of "hurt feelings" and are informed by competent physicians of the damage to the body which may result therefrom, the common law phrase, 'an invasion of a legal right the law will redress,' rings in our ears. The ring of another common law principle sounds in our ears simultaneously, "damnum absque injuria"; the two sounds are disharmonious.

. . . .

The common law rule that mental anguish without other actual injury will not support an action for damages has continued as a legal principle even though the forementioned reasons for maintaining such a rule have been rebutted. This principle does not have the rigidity that it did at common law, but the courts have only allowed action of this sort in very limited situations.

Before stating what the limitations on this type of action are, let us examine why the court house doors have not been flung open to redress injuries to the mental well being of a person. The most valid objection to the protection of such interests lies in the "wide door" which might be opened, not only to fictitious claims, but to trivialities and mere bad manners. [See Prosser—Law of Torts (supra) p. 39, n. 18]. The law cannot be responsible for absolute peace of mind, and many interferences must be left to other agencies of social control.

"Against a large part of the frictions and irritations and clashing of temperaments incident to participation in community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, Mental and Emotional Disturbance in the Law of Torts 1936, 49 Harvard L.Rev. 1033, 1035.

This Court feels that the administrative policy consideration is of great weight in deciding whether or not an action may be maintained for mental interference standing alone. In the face of this strong policy consideration, however, recovery has been allowed for interference with peace of mind in certain situations. It is the opinion of this Court that certain factors present in these cases which have allowed an action for mental injury alone outweighed the valid policy consideration against allowing such actions.

These factors are set out in the Restatement of Torts (2d), sec. 46, "Outrageous Conduct Causing Severe Emotional Distress".

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm results from it, for such bodily harm."

Clarification of this statement is found in the following comment:

"d. *Extreme and Outrageous Conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly untolerable in a civilized community. Gener-

ally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities."

From the foregoing portion of the Restatement, we find the two factors which must concur in order to outweigh the policy against allowing an action for the infliction of mental disturbance: (a) the conduct complained of must have been outrageous, not tolerated in civilized society, and (b) as a result of the outrageous conduct, there must be serious mental injury. Stated another way, there are two valid policies fighting for recognition; the interest in a judicial climate which does not become burdened with trivial lawsuits versus the interest a person has in being free from unreasonable emotional disturbance. The result of this policy conflict has been somewhat of a compromise. The law has developed to the extent that the personal interest in peace of mind is protected from "outrageous" interference which results in substantial emotional damage, and at the same time the policy of protecting the judicial process from trivial claims has been protected by disallowing claims which are not founded on conduct which can be characterized as "outrageous." [See complete annotation in 64 A.L.R.2d 100]. This approach gives limited protection to the interest in emotional tranquility.

The declaration of the plaintiffs is insufficient because the plaintiffs have not alleged a course of conduct on the part of the defendant which could be classed as outrageous. It is not enough in an action of this kind to allege a legal conclusion; the actionable conduct should be set out in the declaration. The defendant's conduct, as set out in the declaration shows that the defendant was negligent in keeping his records and that because of this negligence, he caused two notices of default to the Medlins. He was abusive to Mrs. Medlin on the telephone, but the substance and

severity of the abuse is not set out in the declaration, therefore we cannot ascribe the term "outrageous" to this alleged abuse.

Although the Supreme Court quoted with apparent approval from authorities requiring serious harm for a recovery for outrageous conduct, the reason stated for dismissal was not lack of serious harm but lack of outrageous conduct as evidenced by the concluding words of the opinion as follows:

> In every case cited by the plaintiff (all these cases can be found in 64 A.L.R.2d 100) there has been conduct on the part of the defendant, manifestly more outrageous than that of the instant case.
>
> "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."
>
> Restatement of Torts (2d) sec.46—Comment—p.77.
>
> Thus we conclude by saying that the conduct alleged in the declaration cannot be deemed to be sufficiently outrageous to allow recovery under these circumstances, and we accordingly affirm the trial judge. The case is dismissed with costs to be paid by the plaintiffs in error.

In *Moorhead v. J.C. Penney Co., Inc.*, Tenn.1977, 555 S.W.2d 713, the Supreme Court held that a complaint stated an actionable tort by alleging that plaintiff had been severely harmed emotionally by a mistaken and intensive attempt to collect from plaintiff an amount that should have been credited, rather than charged to her account.

In *Swallows v. Western Electric Company, Inc., supra,* Tenn.1976, 543 S.W.2d 581, the Supreme Court affirmed the dismissal of a complaint for outrageous conduct and invasion of privacy alleging generally that plaintiff's employers had subjected him to an intensive investigation which had "a most deleterious effect upon his emotional stability and well being" and said:

> Liability for the tort of "outrageous conduct" exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury. *Medlin v. Allied Investment Co.*, 217 Tenn. 469, 398 S.W.2d 270 (1966). "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." Restatement of Torts (2d), § 46, comment (d), quoted with approval in *Medlin, supra* 398 S.W.2d at page 274.

In *Martin v. Senators, Inc.*, 220 Tenn. 465, 418 S.W.2d 660 (1967), assuming the existence of the common law right of action for invasion of privacy, this court pointed out a condition engrafted on the action, in that:

> [L]iability (for invasion of privacy) exists only if the conduct is such that a defendant should have realized it would be offensive to persons of ordinary sensibilities; and that *it is only where the intrusion has gone beyond the limits of decency that liability accrues.* . . . (Emphasis supplied.)
>
> . . . The complaint in this action is replete with conclusions couched in the language of *Medlin, supra,* but does not undertake to describe the substance and severity of the conduct of appellee's employees which allegedly amounted to harassment, nor the substance and severity of the conduct of Pinkerton in its investigations, nor the actions of Western Electric in attempting to discipline appellant. And, as was pointed out in *Medlin,* "it is not enough in an action of this kind to allege a legal conclusion; the actionable conduct should be set out in the [complaint]," *supra* 398 S.W.2d at page 275. . . .

It is seen that the major deficiency in the complaint was the lack of specifics of the actions alleged to be outrageous conduct.

In *Johnson v. Woman's Hospital*, Tenn. App.1975, 527 S.W.2d 133, there was an action for breach of contract to bury and outrageous conduct by preserving the body

of a premature stillborn infant in a jar of formaldehyde and displaying same to plaintiff, as a result of which plaintiff suffered nightmares, insomnia, depression and psuedo-pregnancy which caused pelvic pain and required exploratory surgery and psychiatric treatment. This Court affirmed an award of $100,000 compensatory and punitive damages and said:

> We therefore hold that the tort of outrageous conduct is one in which punitive damages may be allowed and in this case the Trial Judge committed no error in submitting that issue to the jury.

In *Dunbar v. Strimas*, Tenn.App.1986, 632 S.W.2d 558, the suit was brought against the county medical examiner by the parents of a 19 month old infant who was found dead in its crib and was examined by the medical examiner who was aware that the mother had experienced a nervous breakdown, but nevertheless related to the parents the details of his findings indicating sexual abuse and murder of the child. The mother thereafter required further treatment of her emotional condition. The Trial Court dismissed the parents' suit by summary judgment. This Court reversed in part and said:

> We conclude that reasonable minds could differ as to whether the conduct of the defendant, as alleged and described by disputed material exhibits, was extreme, outrageous and intolerable in present-day society and the mental and emotional injuries alleged by plaintiffs to have resulted from defendant's conduct are serious. Accordingly, a cause of action for intentional or reckless infliction of severe emotional distress by means of extreme and outrageous conduct has been stated by this record. *Moorhead v. J.C. Penney Co., Inc.*, 555 S.W.2d 713 (Tenn.1977), and cases cited therein at page 717; *also Restatement of the Law of Torts* 2d, § 46. And as *Moorhead* aptly states at page 718:
>
> > The standards here applicable, *i.e.*, "extreme and outrageous" and "not tolerated in civilized society," are, like "negligence" and other variable standards which are based upon the com-

mon sense of the community, primarily for application by the jury.

. . . .

The tort of outrageous conduct is described as an intentional or reckless infliction of severe emotional distress by means of extreme or outrageous conduct, [citing authorities]. . . .

■ Where conduct is not only wrongful, but malicious and oppressive, a victim may, in addition to other damages, recover for mental suffering occasioned thereby. *Schwab v. International Ass'n of Bridge, Structural and Ornamental Iron Workers, AFL–CIO, Local No. 782*, Tenn.App. 1972, 482 S.W.2d 143.

■ It appears that the law in Tennessee is that "outrageous conduct" is behavior the nature of which would produce from a reasonable person the response, "That's an outrage!" It also appears that outrageous conduct may arise from violation of contractual obligations as well as common law duties which underlie the law of torts. It also appears that, if there is any evidence from which reasonable jurors might find outrageous conduct, it is error to direct verdict for the defendant on the issue of whether the conduct was outrageous.

■ Tennessee authorities have recognized, but have not actually applied the rule that, where the injury consists only of mental or emotional suffering, damages may be allowed for outrageous conduct only where there is *serious* mental or emotional injury. No authority is found regarding the limits of the authority of the Trial Judge to direct a verdict on the issue of the seriousness of the mental or emotional injury. This Court is of the opinion that the rule in respect to seriousness of injury should track the rule on outrageousness of conduct, that is, if there is any evidence from which a jury might reasonably find serious injury, then the issue is for the jury and not for the trial judge by directed verdict.

This Court finds that there is evidence in this record to support a verdict that the conduct of the defendants was outrageous

and that serious mental or emotional injury resulted therefrom.

A transaction which involves the processing of photographic film is a bailment. 8 C.J.S. Bailments, § 12, p. 236, n. 34, *Carr v. Hoosier Photo Supplies, Inc.,* Ind.App.1982, 441 N.E.2d 450.

A bailment is generally regarded as a contract relationship. *Rhodes v. Pioneer Parking Lot, Inc.,* Tenn.1973, 501 S.W.2d 569; *Jernigan v. Ham,* Tenn.App.1984, 691 S.W.2d 553; 8 C.J.S. Bailments § 4, p. 226, n. 34.

The evidence shows a gross, inexcusable and outrageous breach of a contract of bailment. The plaintiff delivered and Moto Photo accepted a roll of photographic film for development and printing. Thereby, Moto Photo contracted to develop the film, produce prints therefrom and deliver the developed film and prints to plaintiff for a consideration to be paid by her. Not negligently, but deliberately and fraudulently, Moto Photo deceived plaintiff by representing that the film could not be developed, when the film had been developed and at least one print had been produced. Moto Photo breached its contract to deliver the resulting print or prints to plaintiff and, instead, fraudulently retained the print for its own base purposes, i.e., displaying it to "friends" who desired to see a "wild picture". To compound the wrong, Moto Photo "loaned" the print to Monahan for the declared purpose of "having some fun" at the expense of plaintiff.

The extreme culpability of the actions of Moto Photo demands judicial condemnation which, according to the above quotations requires "serious injury". Even though the facts of the present case might tend to mitigate the seriousness of the injury sustained by this defendant, they cannot mitigate the seriousness of the conduct of the defendants, particularly Moto Photo and its employee, for they had no information as to the circumstances of the customer whom they wronged. In ruling upon a motion for directed verdict, all doubts should be resolved against the defendants who, under this evidence, committed a grievous wrong,

and in favor of discountenancing the wrong.

There is another line of reasoning, not mentioned in briefs, which militates against a directed verdict. It is long established law in Tennessee that a recovery can be had for mental or emotional anguish unaccompanied by physical injury where the wrong consists of error in transmission of a death message by a communications business. *Western Union Telegraph Company v. Potts,* 120 Tenn. 37, 113 S.W. 789; 19 L.R.A. (NS) 479; 127 Am.St.Rep. 991 (1907); and authorities cited therein. One of the reasons given for this exception to the general rule is that the injury arises out of a breach of contract, and the damages recoverable for breach of contract are those which are conceived to be in the contemplation of the contracting parties at the time of the making of the contract. *Hawkins v. Reynolds,* 62 Tenn.App. 686, 467 S.W.2d 791 (1971), and authorities cited therein.

It is reasonable to conceive that a developer of photographic film who accepts custody of the film realized or should have realized the mental or emotional anguish which might reasonably result from a diversion of the resulting prints to a third party for the announced purpose of having fun with (embarrassing) the true owner. On this theory alone, a wronged patron of a photographic enterprise should have a right to relief from wrongful breach of the contract.

For the reasons stated, this Court respectfully disagrees with the decision of the Trial Court to direct a verdict for the defendant on grounds of insufficient seriousness of damages.

The second complaint of the plaintiff is that the Trial Court directed a verdict against her as to invasion of privacy because of failure to prove the distribution of the picture to a sufficient number of people. The oral finding of the Trial Judge, quoted above, indicated that:

In this case there is no evidence of breach of contract express or implied, ... or confidential relationship, and

therefore I am going to grant a directed verdict in the cause of action for invasion of privacy.

As heretofore pointed out, as between plaintiff and Moto Photo, there was a serious breach of contract. As to the employee, Pinto, there was participation in that breach of contract and conversion of property of plaintiff in the wrongful possession of Moto Photo. As to Monahan, there was solicitation and participation in the breach of contract and conversion. Under these circumstances, Monahan committed an invasion of privacy when he looked at a photo which he knew he had no right to view, and he compounded the invasion by borrowing the photo for the purpose of having fun in embarrassing plaintiff by showing it to fellow employees.

There is evidence from which a jury might reasonably find that the wrong of invasion of privacy was committed by all defendants.

The judgment of the Trial Court is reversed. Costs of this appeal are taxed against the appellees jointly and severally. The cause is remanded to the Trial Court for further proceedings.

Reversed and remanded.

LEWIS and CANTRELL, JJ., concur.