# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 10, 2000 Session

## CONNIE JEAN GIVENS v. ED MULLIKIN, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 95241 T.D.      The Honorable John R. McCarroll, Jr., Judge**

_____

**No. W1999-01783-COA-R9-CV - Filed November 28, 2000**

_____

Plaintiff filed this action against defendant in an underlying personal injury suit and the defendant's liability insurance carrier, alleging that the defendants are vicariously liable for the actions of the attorneys the insurance company hired pursuant to its policy to represent the insured in defense of plaintiff's personal injury suit. The complaint alleges that said attorneys were guilty of abuse of process, invasion of privacy, inducing the breach of a confidential relationship, inducing the breach of an implied contract of confidentiality, and inducing the breach of an express contract. The trial court denied defendants' motions to dismiss, and this case is before this Court on a Tenn.R.App.P. 9 interlocutory appeal.

**Tenn.R.App.P. 9; Interlocutory Appeal; Judgment of the Circuit Court is Reversed in Part, Affirmed in Part, and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Nathan W. Kellum, Memphis, For Appellant, Ed Mullikin, Administrator Ad Litem for the Estate of Larry McElwaney

Leo Bearman, Jr., Robert M. Glover, Launice P. Sills, Memphis, For Appellant, Allstate Insurance Company

William H. Fisher, III, Memphis, For Appellee, Connie Jean Givens

# OPINION

Plaintiff, Connie Jean Givens, filed her complaint against Defendant, Larry McElwaney[1], and Defendant, Allstate Insurance Company, for damages allegedly caused by a law firm Allstate hired to represent McElwaney in defense of the personal injury action filed by Plaintiff. The complaint alleges that the Defendants are liable for actions of the law firm under the doctrine of *respondeat superior*. The complaint is 20 pages long, consists of 81 paragraphs, and extensively sets out the factual allegations on which Plaintiff bases her claims of abuse of process, invasion of privacy, inducing the breach of a confidential relationship, inducing the breach of an implied contract of confidentiality, and inducing the breach of an express contract. The trial court denied Defendants' motions to dismiss the complaint for failure to state a claim upon which relief can be granted, and Defendants were granted an interlocutory appeal.

This case arises from an underlying personal injury lawsuit involving Plaintiff, Connie Givens, and Defendant, Larry McElwaney. In that lawsuit, Ms. Givens sued Mr. McElwaney for injuries she sustained in an automobile accident on January 5, 1988. At the time of the accident, Mr. McElwaney carried a liability insurance policy with Defendant, Allstate Insurance Company ("Allstate"). That policy obligated Allstate, *inter alia*, to provide legal counsel to defend any suit instituted against Mr. McElwaney for damages. Allstate engaged Attorney Harold Nichols to represent Mr. McElwaney in the personal injury lawsuit and later substituted the Richardson Law Firm (the "Richardson Firm" or "Firm") on October 20, 1993.

Plaintiff alleges that, while representing Mr. McElwaney, the Richardson Firm engaged in discovery practices which damaged Plaintiff's position in the underlying lawsuit and which caused her to suffer "great embarrassment, anger and stress." Plaintiff claims that, through the acts of their agent, the Richardson Firm, Defendants Allstate and McElwaney are liable for abuse of process, invasion of privacy, inducing the breach of an express contract, inducing a breach of confidential relationship and inducing a breach of an implied contract of confidentiality between Plaintiff and her physician.[2]

Plaintiff alleges that the Richardson Firm acted improperly by exceeding the limit of interrogatories under local court rules by issuing approximately 237 interrogatories and by insisting upon a second deposition of Plaintiff which allegedly took 8 hours to complete and which included

---

[1] After Mr. McElwaney's death, Ed Mullikin, Administrator *Ad Litem* for the Estate of Larry McElwaney, was substituted as defendant/appellant. Any references in the opinion to Mr. McElwaney will refer also to the present appellant.

[2] The Richardson Law Firm is not named as a defendant in this action.

overly personal questions.[3]  Plaintiff also avers that the Richardson Firm abused the subpoena process by issuing 97 subpoenas to records custodians, most of which were to healthcare providers whose treatment of Plaintiff had no bearing on the issues in the lawsuit.  Plaintiff alleges that the subpoenas were used to obtain confidential information regarding the Plaintiff's physical and mental condition.  As a result of these allegedly illegal subpoenas, Plaintiff claims the Richardson Firm invaded her privacy and induced her physician, Dr. Randall Holcomb, and other healthcare providers, to breach their confidential relationships and contracts of confidentiality with Plaintiff.

On July 28, 1998, Defendants each filed Rule 12.02(6) Motions to Dismiss for Failure to State a Claim.  On October 9, 1998, the trial court entered an order denying both motions.  On December 3, 1999, the trial court entered an Order Granting Defendants' Motions for Permission to Appeal, and on January 26, 2000, this Court granted Defendants' Rule 9 application for permission to appeal.

Although the parties disagree as to the wording of the issues this case presents, we believe those issues to be:

> (1)  Whether an insurer and/or its insured can be held liable for the actions of a law firm the insurer hires to defend its insured;
>
> (2)  Whether defense counsel's pre-deposition interviews of Plaintiff's treating physician and other health care providers give rise to a cause of action for inducing a breach of confidential relationship under Tennessee law;
>
> (3)  Whether defense counsel's pre-deposition interviews of Plaintiff's treating physician and other health care providers gives rise to a cause of action for invasion of privacy under Tennessee law;
>
> (4) Whether an implied contract of confidentiality existed between Plaintiff and her treating physician and, if so, whether defense counsel induced a breach of that contract;
>
> (5) Whether an express contract of confidentiality existed between Plaintiff and her treating physician and, if so, whether defense counsel induced a breach of that contract; and
>
> (6) Whether defense counsel's actions during the discovery phase of the underlying personal injury action constituted an abuse of civil process.

This case comes to us on appeal of the trial court's order denying Defendants' Motion to Dismiss for failure to state a claim.  A determination of whether a complaint states a claim upon

---

[3]Paragraph 15 of Plaintiff's Complaint contains an allegation that, at one point, opposing counsel asked her if she "had been sleeping with the Defendant McElwaney."

which relief can be granted obviously requires that the court consider only the allegations of the complaint. *See Wolcotts Financial Services, Inc. v. McReynolds*, 807 S.W.2d 708 (Tenn. Ct. App. 1990).

In *Humphries v. West End Terrace, Inc.*, this Court said:

> A motion to dismiss pursuant to Rule 12.02(6), Tenn. R. Civ. P., for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and, thus, is a test of the sufficiency of the leading pleading. Such a motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. *A complaint should not be dismissed upon such motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court should construe the complaint liberally in favor of the plaintiff taking all of the allegations of fact therein as true.

795 S.W.2d 128, 130 (Tenn. Ct., App. 1990)(citations omitted)(emphasis added). *See also Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997). For the reasons below, we affirm the trial court's denial of Defendants' motions to dismiss as to Plaintiff's claims of inducing breach of an implied contract of confidentiality, inducing breach of express contract, and abuse of process, but reverse as to Plaintiff's claims of invasion of privacy and inducing breach of a confidential relationship.

Liability of Principal for Actions of Agent

The seminal issue in this case is whether an insurer and its insured may be held liable for the actions of the law firm the insurer hires to defend its insured. In order to determine whether such liability exists, we must first determine if there was an agency relationship between each of the Defendants and the Richardson Firm. For the purposes of this determination, we will examine each individual Defendant's relationship separately.

The general rule in Tennessee is that a principal is liable for the negligence or wrongful acts of his agent acting within the actual or apparent scope of his employment in the principal's service. *See, e.g.*, 1 Tenn. Juris., Agency, § 47 (1982); *V.L. Nicholson Co. v. Transcon Inv. and Financial Ltd., Inc.*, 595 S.W. 2d 474, 483 (Tenn. 1980); *McGee v. County of Wilson*, 574 S.W.2d 744, 746-47 (Tenn. Ct. App. 1978). This *respondeat superior* liability exists where the principal has a right to control the agent. *See Doane Agric. Serv., Inc. v. Coleman*, 254 F.2d 40, 43 (6th Cir. 1958), cert. denied, 358 U.S. 818 (1958). Our Supreme Court has recognized that "a servant, acting within the general scope of his authority, makes the master responsible, even though he act without instructions, or exceed his instructions." *Louisville & N. R. Co. v. Marlin*, 186 S.W. 595, 596

(Tenn. 1916). This responsibility on the part of the principal exists even where the injured party is "wholly a stranger" to the principal. *Id.* The question of whether an agency relationship exists and the scope of the agent's authority are questions of fact. *See Mays v. Brighton Bank*, 832 S.W.2d 347 (Tenn. Ct. App. 1992); *Board of Directors of City of Harriman School Dist. v. Southwestern Petroleum Corp.*, 757 S.W.2d 669 (Tenn. Ct. App. 1988).

Defendant McElwaney asserts that a principal cannot be held liable for the actions of an agent who is not a servant unless those actions are controlled or authorized by the principal. The difficulty with this conclusion is that Tennessee law presumes "that a lawyer has the authority to represent the person for whom she or he appears." *In re Ellis*, 822 S.W.2d 602, 606 (Tenn. Ct. App. 1991). *See also Kelly v. Walker*, 346 S.W.2d 253, 256 (recognizing that an attorney is presumed to act with his client's consent when agreeing to the entry of a consent decree against his client, and that the client has the burden of proving that he did not consent to the entry of the decree). In fact, we have said that "[l]awyers are agents and have *prima facie* authority to speak for their client through pleadings and negotiations." *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 902 (Tenn. Ct. App. 1995) (citing Neil P. Cohen, et al., *Tennessee Law of Evidence* § 803(1.2) .4 at 402 (2d ed. 1990). *See also Absar v. Jones*, 833 S.W.2d 86, 89 (Tenn. Ct. App. 1992). The Tennessee Supreme Court in *In re Youngblood*, 895 S.W.2d 322 (Tenn. 1995), observed that:

> The obligation to defend the insured under a contract of insurance obviously contemplates representation by counsel who can exercise professional judgment and devote complete loyalty to the insured. . . *The same loyalty is owed the client whether the attorney is employed and paid by the client . . . or is an independent contractor engaged by the insurer.*

*Id.* at 328 (emphasis added). Under *Youngblood*, the fact that the insurance company hires an attorney to represent its insured's interests does not change the fact that the attorney owes his loyalty, above all else, to the insured. That loyalty is the basis of the agency relationship between an attorney and client.

It is important to note that any presumption that the Richardson Firm represents Mr. McElwaney's interests is a rebuttable one. *See Ellis*, 822 S.W.22d at 606. Clients have the ability to change lawyers or alter the scope of their lawyer's authority whenever they choose. *See id.* at 607. We have said that "the existence and scope of a lawyer's authority to represent a client depends on the manner in which a client retains a lawyer in a particular case." *Id.* These considerations would certainly be relevant at trial, but, on a motion to dismiss, our primary concern is whether the Plaintiff has set out facts in her complaint which are sufficient to state a claim.

We agree with the trial court that, as to Defendant McElwaney, Plaintiff has stated a claim upon which a court could find Mr. McElwaney liable for the actions of the Richardson Firm. In Paragraph 81 of her complaint, Plaintiff alleges that:

> The Richardson Firm was at all times material hereto acting within the scope of its employment as agent of both the Defendants McElwaney and Allstate, and the said

Defendants are therefore liable for the conduct of the Richardson Firm described above under the doctrine of respondeat superior.

While this statement is conclusory, if taken as true, Plaintiff has alleged facts sufficient for a court to find that Mr. McElwaney is liable for the actions of his attorneys.

We also hold that, as to Defendant Allstate, the trial court's denial of Defendants' motion to dismiss was proper. In support of its position, Allstate asserts that the Richardson Firm was an independent contractor, and that there can be no attorney-client relationship between an insurance company and the attorney it hires to defend its insured. In support of this position, Allstate cites *In re Youngblood*, in which the Tennessee Supreme Court wrote that :

> The ***employment of an attorney by an insurer to represent the insured does not create the relationship of attorney-client between the insurer and the attorney***, nor does that employment necessarily impose upon the attorney any duty or loyalty to the insurer which impairs the attorney-client relationship between the attorney and the insured or impedes the performance of legal services for the insured by the attorney.

895 S.W.2d at 328 (emphasis added). We do not take issue with the characterization that Allstate was not the Richardson Firm's client. This, however, does not end the inquiry into whether Allstate may be held liable for the Firm's actions.

As we noted above, ***respondeat superior*** liability will attach where the principal has a right to control the actions of its agent. The fact that the Richardson Firm may have been Allstate's independent contractor does not preclude a finding of control. We have said that "[t]he term 'agent' has. . . been given a broad interpretation. . . and is not inconsistent with the term 'independent contractor'." ***Dempster Bros., Inc. v. U.S. Fidelity & Guaranty Co.***, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964). In ***Howard v. Haven***, 281 S.W.22d 480 (Tenn. 1955), the Court said:

> Agency in its broadest sense "includes every relation in which one person acts for or represents another." ***C. M. Keys Commission Co. v. Miller***, 59 Okl. 42, 157 P. 1029, 1030; 2 Words and Phrases, Agency, p. 717. In ***Electric Light & Power Co. v. Bristol Gas, Electric Light, etc., Co.***, 99 Tenn. 371, 381, 42 S.W. 19, 21 there appears the postulate by Mr. Justice Caldwell, "What one does through another he does himself."

***Id.*** at 485.

Under these authorities, therefore, an independent contractor may be an agent where the principal has the ability to control the independent contractor's actions.

In response, Defendant Allstate cites, ***inter alia***, Formal Ethics Opinion 88-F-113 (1988) for the proposition that it is unethical for an insurance company to direct the actions of an attorney hired to represent its insured. That opinion reads, in part:

The attorney should devote his complete loyalty to the insured-client and not allow the insurer, or anyone else, to regulate, direct, control or interfere with his professional judgment.

We wholeheartedly agree. However, the fact that it would be unethical for the Richardson Firm to accept direction from Allstate does not mean that Allstate did not direct the Firm's actions. In her complaint, Plaintiff alleges that Allstate fired Hal Nichols and hired the Richardson Firm to represent Mr. McElwaney in the underlying suit. Obviously, Allstate had the authority to control the hiring and firing of Mr. McElwaney's attorneys and, arguably, even though unethical, the actions of those attorneys. Plaintiff has also alleged that the Richardson Firm acted as agent for Allstate, and that Allstate had a financial stake in the outcome of the underlying litigation. Whether Plaintiff can prove the allegations of control at trial is immaterial in the context of a motion to dismiss.

Having determined that Defendants may be held liable for the actions of the Richardson Firm, we must next review each cause of action that Plaintiff alleges would give rise to such liability. We first address whether Plaintiff states a claim that the Richardson Firm induced Plaintiff's physician to breach his confidential relationship with her or to invade Plaintiff's privacy when the Firm interviewed Plaintiff's physician prior to depositions in the underlying action.

Inducing Breach of a Confidential Relationship

A confidential relationship exists between a patient and his or her physician. *See, e.g., Shadrick v. Coker*, 963 S.W.2d 726, 735 (Tenn. 1998); *Roberts v. Chase*, 166 S.W.2d 641, 650 (Tenn. Ct. App. 1942). However, Tennessee follows the common law rule that no evidentiary privilege exists between a physician and his or her patient. *See Quarles v. Sutherland*, 389 S.W.2d 249, 251 (Tenn. 1965). Even where an evidentiary privilege does exist, that privilege may be waived. *See, e.g., Kirchner v. Mitsui & Co. (U.S.A.), Inc.*, 184 F.R.D. 124, 128 (M.D. Tenn. 1998)(holding that statutory waiver to the psychiatrist-patient privilege applies where plaintiff has raised the issue of her mental or emotional condition by seeking damages for emotional distress); *Wright v. Wasudev*, 1994 WL 642785, No. 01-A-01-9404-CV00176, *5 (Tenn. Ct. App. 1994)(holding that "the institution of a personal injury suit which presents issues requiring the disclosure of medical information effectively waives such physician-patient privilege as the injured party might assert under Tennessee laws or public policy. . ."); *Bryan v. State*, 848 S.W.2d 72, 81 (Tenn Crim. App. 1992)(setting out a three-part test for when a party waives attorney-client privilege under Tennessee law); *State v. Vilvarajah*, 735 S.W.2d 837, 839 (Tenn. Crim. App. 1987)(holding that the psychiatrist-patient privilege did not apply where murder defendant had given notice of insanity defense).

Plaintiff argues that there is a distinction between the evidentiary privilege rejected in *Quarles v. Sutherland* and the type of *ex parte* communications at issue in this case. We agree, but we believe the distinction does not alter the outcome in this case. We have said that:

Any citizen, including a physician, has a legal right to discuss any unprivileged matter with any person if he desires to do so.

> There is no legal duty upon any citizen to engage in any discussion with the representative of any litigant in a civil matter. The only compulsory disclosure of facts in civil litigation is by subpoena from a court which has the power to determine the limits and conditions of disclosure.

*Wright*, 1994 WL 642785 at *6. Therefore, if a physician has a duty to refrain from disclosing unprivileged information, that duty must be based upon something other than an evidentiary privilege. Plaintiff argues that such a duty arises from the ethical precepts by which a physician is bound. The Tennessee Supreme Court, however, rejected this argument in *Quarles*, noting that:

> We are aware that physicians and surgeons are required by the ethics of their profession to preserve the secrets of their patients which have been communicated to them or learned from symptoms or examination of other bodily conditions. However, **under the common law. . .this ethical requirement is not enforceable by law**. . .

389 S.W.2d at 251 (emphasis added). Under Tennessee law, we find no basis for a cause of action for inducing a breach of duty of confidentiality.

Courts in other jurisdictions have reached similar results. In a case remarkably similar to the case before us, ***Brandt v. Medical Defense Assoc.***, 856 S.W.2d 667 (Mo. 1993), the Missouri Supreme Court addressed the issue of *ex parte* communication between physicians and third parties. *Brandt* involved two lawsuits: an underlying medical malpractice action and an action against the medical malpractice insurer and plaintiff's physicians based on breach of fiduciary duty and invasion of privacy. *See id.* The *Brandt* court held that:

> . . . a physician has a fiduciary duty of confidentiality not to disclose any medical information received in connection with the treatment of the patient. We further hold that if any such information is disclosed under circumstances where this duty of confidentiality has not been waived, the patient has a cause of action for damages in tort against the physician.
>
> We hold that the waiver of the medical privilege. . . which occurs in a personal injury or medical malpractice case once there is an issue joined concerning the plaintiff's medical condition, is a waiver of both the testimonial privilege and the physician's fiduciary duty of confidentiality.

856 S.W.2d at 674. The court went on to note that, if a physician refuses to participate in such *ex parte* communications, the defendant would be required to take the physician's formal deposition to obtain information. *See id.* We agree with the reasoning of the *Brandt* court.

Under the above authorities, we hold that a plaintiff cannot state a claim for breach of a confidential relationship where the plaintiff has waived his or her rights to confidentiality. Under the facts of this case, we hold that Plaintiff effectively waived her right to maintain the

-8-

confidentiality of her relationship with her physicians by making her physical condition an issue in the underlying personal injury action. Without a right to maintain physician-patient confidentiality, Plaintiff cannot complain that the Defendants in this case induced the breach of any such relationship.

Invasion of Privacy

Plaintiff also alleges that the Richardson Firm invaded her privacy, or induced others to invade her privacy, in several ways: by issuing illegal subpoenas in the underlying action to Plaintiff's healthcare providers and hospital; and by speaking privately with Plaintiff's healthcare providers. We will address these claims together.

Tennessee recognizes a common law right of action for invasion of privacy. *See Martin v. Senators, Inc.*, 418 S.W.2d 660, 662 (Tenn. 1967); *Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 752 (Tenn. Ct. App. 1991).

> [Liability for invasion of privacy] exists only if the conduct is such that a defendant should have realized it would be offensive to persons of ordinary sensibilities; and that it is only where the intrusion has gone beyond the limits of decency that liability accrues, reasonable minds must agree that no such case is made by the declaration.

*Martin*, 418 S.W.2d at 664. The four types of invasion of privacy torts are: (1) intrusion; (2) public disclosure of private facts; (3) false light; and (4) appropriation for commercial purpose. *See Beard v. Akzona, Inc.*, 517 F.Supp. 128, 131 (E.D. Tenn. 1981). Based upon the allegations in the complaint, only a claim for invasion of privacy based on "intrusion" is applicable in this case. In *Beard,* the United States District Court for the Eastern District of Tennessee, citing the Restatement Second of Torts, described the claim of intrusion:

> Having been cited to no Tennessee cases explicitly defining this aspect of invasion of privacy, we defer to the statement of the law contained in Restatement Second of Torts, § 652B. That section provides:
>
> > One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
>
> Whether the information gained by reason of the intrusion was ever publicized is irrelevant to this form of invasion of privacy.

517 F.Supp. at 131 (citations omitted).

In her complaint, Plaintiff alleges she suffered "great embarrassment, anger and stress over the knowledge that the details of her most intimate revelations. . . had been made public by the

conduct of the Richardson Firm." Damages for such mental suffering are recoverable in tort actions such as invasion of privacy. ***See Dunn v. Moto Photo, Inc.***, 828 S.W.2d 747, 751 (Tenn. Ct. App. 1991). However, to recover for mental suffering, the conduct must be outrageous and must result in serious mental injury. ***See id.*** These requirements reflect a balance between "the interest a person has in being free from emotional disturbance" and the interest in "a judicial climate which does not become burdened with trivial lawsuits." ***Id.***

Given the two requirements set out in ***Dunn***, we hold that Plaintiff has failed to state a cause of action for invasion of privacy. Although Plaintiff's claim that she suffered greatly could be construed as "serious" mental injury, we do not find any allegations in her complaint which rise to the requisite level of "outrageous" conduct on the part of the Richardson Firm. As this Court noted, "It is not enough in an action of this kind to allege a legal conclusion; the actionable conduct should be set out in the declaration." ***Id.*** at 751.

Even if Plaintiff had alleged the requisite level of conduct, we believe Plaintiff waived any right to assert a claim of invasion of privacy in the same manner in which she waived her right to confidentiality in her relationships with her healthcare providers. The Tennessee Supreme Court defined the common law right of privacy as, "the right to be let alone; the right of a person to be free from unwarranted publicity." ***Martin v. Senators, Inc.***, 418 S.W.2d 660, 662-63 (Tenn. 1967)(quoting ***Langford v. Vanderbilt University***, 287 S.W.2d 32, 38 (Tenn. 1956)). In ***Martin***, the Court went on to say:

> As to waiver or relinquishment, [American Jurisprudence] says:
>
>> "The right of privacy, like other rights that rest in an individual, may be waived by him. ***A waiver or relinquishment of this right, or of some aspect thereof, may be implied from the conduct of the parties and the surrounding circumstances.*** The consent of an individual to the use of his picture and name for advertising purposes constitutes a waiver of his right of privacy to that extent. And one who consents to the use of his name by a corporation for the purposes of trade cannot recover, on the ground of invasion of privacy, on account of such use. . . . " 41 Am.Jur. 937

418 S.W.2d at 663 (emphasis added). We believe that, by making her medical condition an issue in this case, Plaintiff has effectively waived any right she has to assert a claim for invasion of privacy. We therefore reverse the trial court's ruling as to Plaintiff's invasion of privacy claim.

Breach of Express and Implied Contract Claims

Tennessee recognizes both a statutory and common law cause of action for inducing the breach of a contract. ***See Polk and Sullivan, Inc. v. United Cities Gas Co.***, 783 S.W.2d 538, 542 (Tenn. 1989). The statutory and common law claims are identical except as to the amount of damages recoverable. ***See id.; Emmco Ins. Co. v. Beacon Mut. Indem. Co.***, 322 S.W.2d 226, 231

(Tenn. 1959). T.C.A. § 47-50-109[4] substitutes treble damages for punitive damages. *See id.* The requirements of an inducement of breach of contract claim are: (1) a legal contract; (2) knowledge of the existence of the contract on the part of the wrongdoer; (3) intent to induce breach; (4) malice on the part of the wrongdoer; (5) breach of contract; (6) proximate cause; and (7) damages. *See McGaugh v. Galbreath*, 996 S.W.2d 186, 193 (Tenn. Ct. App. 1998).

We have said that the relationship between a physician and patient is a contractual agreement, created when the patient knowingly seeks treatment and the physician knowingly accepts the patient. *See Jennings v. Case*, 10 S.W. 3d 625, 628 (Tenn. Ct. App. 1999). This contract can be express or implied, and may be general or limited in its scope. *See id.* We have said that the cause of action for inducing a breach of contract can also apply to an implied contract. *See Mefford v. City of Dupontonia*, 354 S.W.2d 823, 826 (Tenn. Ct. App. 1961).

In the case at bar, Plaintiff alleges she entered into an express contract, as well as implied contracts of confidentiality with her healthcare providers. As to the express contract, Plaintiff alleges that Dr. Holcomb required her to execute a written release of records form which states, in pertinent part:

> This is to authorize The Orthopedic Clinic to give a full medical report on my condition while under his observation or treatment to my attorney _____. *Otherwise this information is to be confidential.*"

(Emphasis added). This, Plaintiff claims, created an express contract which obliged Dr. Holcomb to treat her medical records as confidential, and refrain from releasing those records without her permission. We need not say, for the purposes of a motion to dismiss, that this language created an express contract between the Plaintiff and Dr. Holcomb. We do, however, agree with the trial court that the Plaintiff's allegation that such a contract exists is sufficient in the context of a motion to dismiss.

---

[4]That section provides:

**§ 47-50-109. Inducement of breach of contract; damages**

It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

Plaintiff also alleges that, as a result of the Medical Records Act, T.C.A. § 63-2-101[5], et seq., the Patient's Privacy Act, T.C.A. §§ 68-11-1501[6], et seq., as well as the ethical principles by which healthcare providers are bound, implied contracts of confidentiality existed between Plaintiff and her healthcare providers. Defendants cite *Mefford*, *supra*, for the proposition that the contract between a healthcare provider and his or her patient is an "implied at law" contract and therefore not actionable under a claim of inducement of breach of contract. While we agree that an implied at law contract is not actionable under the common law or T.C.A. § 47-50-109, we disagree with Defendants that the relationship between Plaintiff and her physician is such a contract. In *Mefford*, the Court described a contract implied in fact:

> In *Weatherly v. American Agricultural Chemical Co.*, 16
> Tenn.App. 613, 65 S.W.2d 592, we said that contracts implied in fact
> arise under circumstances which, according to the ordinary course of
> dealings and common understanding of men, show mutual intention

---

[5]That Act provides, in relevant part:

(a)(1) Notwithstanding any other provision of law to the contrary, a health care provider shall furnish to a patient or a patient's authorized representative a copy or summary of such patient's medical records, at the option of the health care provider, within ten (10) working days upon request in writing by the patient or such representative.

\* \* \*

(b)(1) Except as otherwise provided by law, such patient's medical records shall not constitute public records, and nothing contained in this part shall be deemed to impair any privilege of confidentiality conferred by law on patients, their personal representatives or heirs.

[6]That Act provides, in relevant part:

**§ 68-11-1502. Expectation, right to privacy**

Every patient entering and receiving care at a health care facility licensed by the board for licensing health care facilities has the expectation of and right to privacy for care received at such facility.

**§ 68-11-1503. Name, address, other identifying information**

(a) The name and address and other identifying information of a patient shall not be divulged except for:
(1) Any statutorily required reporting to health or government authorities;
(2) Access by an interested third-party payer (or designee) for the purpose of utilization reviews, case management, peer reviews, or other administrative functions;
(3) Access by health care providers from whom the patient receives or seeks care; and
(4) if the patient does not object, any directory information including only the name of the patient, the patient's general health status and the patient's location and phone number. Directory information shall be released to all inquirers only if the patient has been notified, upon admission to the hospital, of the patient's right to object to the information which may be released and has not objected; or, if the patient is in a physical or mental condition such that the patient is incapable of making an objection and the next of kin or patient representative does not come forward and object.
(b) The name and address and other identifying information shall not be sold for any purpose.
(c) Any violation of this provision shall be an invasion of the patient's right to privacy

-12-

to contract, and may result as legal inferences from the fact and circumstances of the case. And in *Noon v. Fisher*, D.C., 45 F. Supp. 653, it was stated that the difference between an expressed and implied contract lies merely in the mode of manifesting assent in that in the former, assent is set out in words or other mode of expression, whereas in the latter, assent is shown by the conduct of the parties. Thus it appears that in order that a contract may be implied in fact, the facts and circumstances of the case must show assent.

354 S.W.2d at 826. On the other hand, an implied at law contract is a quasi contract defined as a:

> [l]egal fiction invented by common law courts to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.

*Black's Law Dictionary* 324 (6th ed. 1990). The allegations of the complaint are sufficient to set forth an express or implied in fact contract.

Our Supreme Court, in dicta, has indicated that "the only possible sounding" of an action for wrongful disclosure "would be under the allegations that there was an implied contract between the parties. . . ." *Quarles*, 389 S.W.2d at 252. Given the *Quarles* court's rejection of a common law cause of action based on a breach of ethical duty, however, the basis for a contractual claim would most likely be a breach of fiduciary duty to maintain doctor-patient confidentiality. *See, e.g., Turner v. Leathers*, 232 S.W.2d 269, 271 (Tenn. 1950)(noting that confidential and fiduciary relations include the physician-patient relationship); *McClellan v. Stanley*, 978 S.W.2d 943, 945 (Tenn. Ct. App. 1998)(holding that a doctor is his patient's fiduciary, and noting that requiring patients to question their doctors' actions would destroy the trust necessary for proper treatment); *Hall v. De Saussure*, 297 S.W.2d 81, 86 (Tenn. Ct. App. 1956)(noting that a physician "is in a position of trust and confidence as regards the patient. . . .") Of course, for Plaintiff to recover based on such a contract, she will have to prove the existence of those implied contracts by a preponderance of the evidence. *See Mefford*, 354 S.W.2d at 826. We hold only that Plaintiff has sufficiently alleged the existence of contracts which, if they exist, meet the requirements of a cause of action for inducing a breach of contract.

As to the remaining elements of an action for inducing breach of a contract, we also find that Plaintiff alleges facts which, if taken as true, could sustain such an action. Plaintiff alleges that the Richardson Firm was aware of the existence of the alleged contracts based upon the widespread use of medical release forms containing similar language to Dr. Holcomb's form, and the existence of the Medical Records Act.[7] Similarly, Plaintiff alleges that the Richardson Firm acted intentionally and maliciously in its attempts to secure Plaintiff's medical records from her healthcare

---

[7]Plaintiff also alleges such knowledge based upon the ethical requirements of the medical profession. However, as discussed earlier, breach of these ethical considerations is not actionable under Tennessee law.

professionals. Plaintiff further alleges that these express and implied contracts were, in fact, breached, and that the Richardson Firm's actions were the proximate cause of the breaches.

Finally, Defendants assert that Plaintiff has failed to show actionable damages for the alleged breach. We disagree. Construing Plaintiff's complaint in the light most favorable to her position, Plaintiff has alleged that Defendants' conduct has put her at a strategic disadvantage, and has caused her to suffer emotional damage, as well as monetary losses. For the purposes of a motion to dismiss, these allegations are sufficient.

Abuse of Process Claim

Tennessee recognizes two types of tort actions for misuse of legal process: abuse of process and malicious prosecution. *See Bell ex rel Snyder v. Icard, Merrill, Cullis, Timm, Furen and Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. 1999). A claim for abuse of process alleges that the process has been used improperly after it has been issued, whereas a claim for malicious prosecution alleges that the plaintiff has maliciously sued the defendant without probable cause. *See id.* Our Supreme Court has said that:

> To establish a claim for abuse of process in Tennessee, as in a majority of other jurisdictions, two elements must be alleged: "(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge."

*Id.* (*quoting Priest v. Union Agency*, 125 S.W.2d 142, 143 (Tenn. 1939)). The Court went on to say:

> As this Court emphasized in *Priest*,
>
>> The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do.
>
> 174 Tenn. at 307, 125 S.W.2d at 144. Abuse of process does not occur unless the "process is perverted, i.e., directed outside of its lawful course to the accomplishment of some object other than that for which it is provided." *Id.* The mere existence of an ulterior motive in doing an act, proper in itself, is not sufficient. *Id.* An action for abuse of process cannot be sustained where the process was employed to perform no other function than that intended by law. *Id.* The bad intent must culminate in an actual abuse of the process "by perverting it to a use to obtain a result which the process was not intended by law to effect." *Id.* at 308, 125 S.W.2d at 144. "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or

-14-

the payment of money, by the use of the process as a threat or a club." [W. Page Keeton et al., ***Prosser and Keeton on the Law of Torts*** § 121 at 897 (5th ed. 1984).]
***Id.***

Plaintiff's complaint appears to allege abuse of process based upon the Richardson Law Firm's actions in: (1) issuing interrogatories in excess of the limit set out in the local court rules; (2) engaging in overly intense questioning of Plaintiff during her deposition; and (3) issuing illegal subpoenas. We find that, as to the above allegations, only the claim of issuing illegal subpoenas states a claim of abuse of process.

Plaintiff's complaint correctly points out that the Richardson Firm exceeded the number of interrogatories permitted under Rule 12(b) of the Local Rules of the Circuit Court of Tennessee for the Thirtieth Judicial District. Rule 12(b) provides:

(b) No party shall serve on any other party more than thirty (30) interrogatories without leave of court. For purposes of this Rule a sub-part of an interrogatory shall count as an additional interrogatory. Any motion seeking permission to serve more than thirty interrogatories shall set out the additional interrogatories the party wishes to serve, together with the reasons establishing good cause for the service of additional interrogatories. If a party is served with more than thirty interrogatories, without order of the court, he shall respond only to the first thirty.

However, Plaintiff's complaint admits that the Richardson Firm sought and obtained a court order in compliance with the Rule. Plaintiff's complaint also admits that, while the Firm submitted more interrogatories without such a court order, Plaintiff responded to these interrogatories "rather than make an issue of the excessiveness of the request." We believe that in answering and failing to object to these additional interrogatories, Plaintiff has waived any right to now complain they were excessive and, therefore, fails to state a claim for abuse of process as to the interrogatories.

Plaintiff also alleges that the Richardson Firm's deposition of Plaintiff delved into "trivial" ailments, was excessively long, and involved overly personal questions regarding the Plaintiff's private life. Rule 30.04 of the Tennessee Rules of Civil Procedure provides:

At any time during the taking of the deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the court in which the action is pending may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 26.03.

Again, we note that there is no indication that Plaintiff availed herself of the recourse the Rules provide. Under these circumstances, we must find that any claim for abuse of process based upon Plaintiff's deposition is waived.

Finally, Plaintiff claims the Richardson Firm is liable for abuse of process because it issued "illegal" subpoenas to Plaintiff's healthcare providers. Plaintiff's complaint alleges that these subpoenas were illegal for two reasons. First, Plaintiff alleges that the Defendants violated Tenn. R. Civ. P. Rule 45.07 because the subpoenas the Richardson Firm issued to Plaintiff's healthcare providers gave the healthcare providers the option of sending their records directly to the Richardson Firm in lieu of deposition. That rule provides:

> Every subpoena issued and served under any part of this Rule 45 for testimony, books, papers, documents, or tangible things must command the witness to appear at a trial, hearing, or deposition unless otherwise provided by statute or by agreement of all parties.

Tenn. R. Civ. P. Rule 45.07. The Advisory Commission Comment to Rule 45.07 indicates that the revised rule was intended to prevent attorneys from issuing subpoenas and obtaining documents without informing opposing counsel. If, as Plaintiff alleges, the Richardson Firm did not obtain her consent to having the healthcare providers submit medical records in lieu of deposition, the Firm's actions in issuing the subpoenas could certainly be considered an act which does not fall under the purview of "proper" process. *See Bell*, 986 S.W.2d at 555. Although Defendants argue that Plaintiff did agree to these subpoenas, we believe this is an issue of fact which will be for the trier of fact to ascertain at trial. For the purpose of a motion to dismiss, we hold only that the allegation that the Firm did not obtain Plaintiff's consent, coupled with Plaintiff's allegations that the Richardson Firm had an ulterior motive, namely, discouraging Plaintiff from vigorously prosecuting the underlying action, is sufficient to state a claim for abuse of process.

Plaintiff also alleges that the above subpoenas were illegal because they violated the Patient's Privacy Protection Act, T.C.A. § 68-11-1501, et seq. The Act, specifically T.C.A. § 68-11-1505, provides that, "Nothing in this part shall be construed as prohibiting the information made confidential by the provisions of this part from being subject to the subpoena of a court of competent jurisdiction." If Plaintiff's allegations are true, then it could be said that the Firm abused the process by issuing illegal subpoenas in order to fall within the above statutory exception. The same could be said for T.C.A. § 68-11-405, which permits release of hospital records directly to counsel pursuant to subpoena only in cases where the Plaintiff has raised the issue of his or her physical or mental condition.

Accordingly, the order of the trial court denying Defendants' motions to dismiss as to the causes of action for invasion of privacy and inducing the breach of a confidential relationship is reversed and the order in all other respects is affirmed. Costs of the appeal are assessed one-half to Plaintiff and one-half to Defendants, Allstate Insurance Company and Ed Mullikin, Administrator Ad Litem for the Estate of Larry McElwaney, and their sureties. The case is remanded to the trial court for such other proceedings as may be necessary.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.