IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 28, 2001 Session

## WANDA J. STEINBRUNNER  v. TURNER FUNERAL HOME, INC., ET AL.

Appeal from the Circuit Court for Hamilton County
No. 98-C-0923     Jacqueline E. Schulten, Judge

FILED JANUARY 2, 2001

No. E2001-00014-COA-R3-CV

Six years after her husband died, Wanda J. Steinbrunner sued the Chattanooga funeral home that handled his burial and the medical examiner that performed his autopsy.  She made various claims based upon theories of negligence, gross negligence, and outrageous conduct.  The trial court granted the funeral home and the medical examiner summary judgment.  Steinbrunner appeals, challenging the grant of summary judgment.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

W. Troy McDougal, Collegedale, Tennessee, for the appellant, Wanda J. Steinbrunner.

David W. Noblit, and Erin K. Brownfield, Chattanooga, Tennessee, for the appellee, Turner Funeral Home, Inc.

David W. Norton, Chattanooga, Tennessee, for the appellee, Frank King, M.D.

**OPINION**

I.

On May 6, 1998, Wanda J. Steinbrunner filed a complaint in the trial court seeking damages for emotional distress she claims to have suffered as a result of the actions of Dr. Frank King, the medical examiner ("the medical examiner" or "Dr. King"), and Turner Funeral Home, Inc. ("the Funeral Home").  On July 15, 1999, Steinbrunner amended her complaint, asserting claims of negligence *per se*, gross negligence, and outrageous conduct.  The trial court granted the medical examiner's motion for summary judgment.  The court found that the medical examiner's actions arose out of his responsibilities under T.C.A. § 38-7-112.  The court concluded that he enjoys immunity from all of Steinbrunner's claims.  The trial court also granted the Funeral Home's motion

for summary judgment, finding that the one-year statute of limitations has expired for any cause of action arising out of the burial, disinterment, and reburial of the decedent. In addition, the trial court concluded that the facts do not establish outrageous conduct. The court also concluded that the facts before it conclusively demonstrate that all negligence claims are without merit.

II.

On May 1, 1992, Alva F. Steinbrunner died suddenly. Due to the circumstances surrounding his death, an employee of the Hamilton County Medical Examiner's Office investigated his death and took photographs of the body in the emergency room. Finding no suspicious circumstances, the medical examiner released the body for burial without an autopsy. Mr. Steinbrunner was buried by the Funeral Home on May 4, 1992. On May 7, 1992, the medical examiner issued a death certificate listing the cause of death as hypertensive cardiovascular disease. Steinbrunner questioned the cause of death, claiming to be unaware that her husband had cardiovascular problems. As a result, on May 12, 1992, at Steinbrunner's request, her husband's body was disinterred by the Funeral Home and taken to the medical examiner who performed a complete autopsy. He found advanced coronary arteriosclerosis. The decedent was reintered by the Funeral Home on the same day. On June 15, 1992, Steinbrunner learned of the autopsy results but took no immediate action with respect to them.

Five years following the autopsy, the plaintiff again began to question the cause of her husband's death.[1] After discovering that the medical examiner had photographs of her husband taken shortly after his death, Steinbrunner requested a meeting with the medical examiner to inquire further about his death.[2] During the meeting on August 19, 1997, Steinbrunner and the medical examiner had a general discussion about the autopsy process, including that aspect of the process involving the removal of organs. The medical examiner told Steinbrunner that sometimes funeral homes use filler material such as sawdust, newspapers or towels in bodies to absorb fluids after organs are removed during an autopsy. At this same meeting, during a discussion with Steinbrunner about the cause of her husband's death, the medical examiner showed Steinbrunner eleven photographs of decedent, including two photographs taken shortly after his death. Before showing the photographs to Steinbrunner, the medical examiner told Steinbrunner that the photographs are "upsetting, and they're going to have some fluid and –in some of the pictures, and that they– they're not nice pictures to look at." While looking at each of the photographs, Steinbrunner never informed the medical examiner she did not want to see any more pictures or that seeing them was upsetting her. At no time did Steinbrunner ask the medical examiner to stop showing her the photographs.

---

[1]The appellees state in their briefs that "[i]t was only when Steinbrunner became involved in litigation regarding her husband's credit card accounts and when she became aware that her husband had a life insurance policy paying out for accidental death that Steinbrunner became obsessed with the idea that her husband had not died of natural causes."

[2]Steinbrunner spoke with Mr. Winters, the employee of the medical examiner's office who actually investigated decedent's death on May 1, 1992, and took the photographs in the emergency room.

Following the meeting with the medical examiner, Steinbrunner "feared" that her husband's body had been mistreated during his second burial and that the funeral home might have filled his body with filler material after the autopsy. As a result, on March 10, 1998, at Steinbrunner's request, decedent's body was disinterred a second time and transported to Nashville for a forensic examination. When the casket was opened, there was no identification on the body, a portion of the forms in the casket had been left blank, and, according to the plaintiff, the decedent's clothing did not match the general description of the clothing that she remembered selecting for his burial.

Steinbrunner sued both the medical examiner and the Funeral Home, alleging outrageous conduct and gross negligence as to both defendants. She also charged the Funeral Home with negligence *per se*, and simple negligence. As previously stated, the trial court granted the medical examiner and the Funeral Home summary judgment. This appeal followed.

III.

Steinbrunner challenges the trial court's grant of summary judgment. She raises the following questions:

> Are there disputed material facts or doubt as to the conclusions to be drawn from undisputed material facts so as to render inappropriate the trial court's grant of summary judgment to the defendants:
>
> (a) as to the Funeral Home's defense of the statute of limitations relative to the plaintiff's claims arising out of the burial, disinterment and reburial of the plaintiff's spouse;
>
> (b) as to the plaintiff's claims against the Funeral Home for negligence *per se*, negligence, gross negligence, and outrageous conduct;
>
> (c) as to the plaintiff's claims for gross negligence and outrageous conduct against Dr. King; and
>
> (d) as to Dr. King's affirmative defense of a bar based on the Governmental Tort Liability Act ("GTLA")?

IV.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable

-3-

inferences in favor of that party, and discard all countervailing evidence." ***Byrd v. Hall***, 847 S.W.2d 208, 210-11 (Tenn. 1993).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. ***Id.*** at 215. Once the moving party satisfies its burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission of the case to a trier of fact. ***Id.***

Since summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. ***Gonzales v. Alman Constr. Co.***, 857 S.W.2d 42, 44 (Tenn. Ct. App. 1993).

V.

A.

The trial court held that "the one year statute of limitations has expired for any cause of action arising out of the burial, disinterment and reburial of Plaintiff's decedent." Steinbrunner claims that none of her causes of action are barred by the one-year statute of limitations for personal injury actions because, based on the discovery rule, a period of limitations does not begin to run until a person is injured, and she claims she was not injured until her meeting with Dr. King on August 19, 1997. Since her complaint was filed on May 6, 1998, she argues that it falls within the one-year limitations period.

The Funeral Home makes a number of arguments on appeal. It asserts that the statute of limitations for Steinbrunner's claims expired before she filed her complaint. In support of this assertion, the Funeral Home argues the well-established principle that under the discovery rule, a statute of limitations is tolled only until an injury occurs or is discovered, or until a reasonable person exercising due diligence should have discovered an injury or legal claim. ***Foster v. Harris***, 633 S.W.2d 304, 305 (Tenn. 1982). Based on this principle, the Funeral Home argues that if Steinbrunner had a cause of action, she should have known about it in May, 1992. Accordingly, the Funeral Home argues, her cause of action accrued in 1992 and expired in 1993.

The applicable statute of limitations for actions involving personal injury is one year from the time the cause of action accrues. T.C.A. §28-3-104(a)(1) (2000). In order to determine when a cause of action accrues, it is necessary to apply the discovery rule. ***John Kohl & Co. P.C. v. Dearborn & Ewing***, 977 S.W.2d 528, 532 (Tenn. 1998). "Under this rule, a cause of action accrues when the plaintiff knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." ***Id.*** The discovery rule serves as a shield to a limitations defense only when the plaintiff does not discover and could not have reasonably discovered that he or she had a cause of action. ***Woods v. Sherwin-Williams Co.***, 666 S.W.2d 77, 80 (Tenn. Ct. App. 1983). It does not allow the plaintiff to wait until he or she knows all of the injurious effects or consequences of the tortious act. ***Id***.

-4-

In 1998, following her conversation with Dr. King in 1997, Steinbrunner had her husband's body exhumed a second time in order to see if filler had been placed in his body. It was not until the second disinterment that she actually discovered the actions of the Funeral Home which, according to her, provide a basis for her personal injury claims. However, assuming that she learned of actionable conduct in the 1997-1998 time frame, the facts before us fail to establish that she could not have learned of these matters at the time of the first disinterment in 1992 if she had exercised "reasonable care and diligence." *See* 977 S.W.2d at 532. If the Funeral Home breached a duty to Steinbrunner, the breach occurred no later than May 12, 1992, during the first disinterment of the decedent. Applying the discovery rule, we find that Steinbrunner should have been placed on notice of the predicate facts in 1992. The actions upon which Steinbrunner bases her claims arose in or about May, 1992. This being the case, she was required to file suit no later than May, 1993. Steinbrunner did not file suit until May 6, 1998. As a result, we agree with the trial court that any injury arising from the burial, disinterment, and reburial of decedent is barred by the one-year statute of limitations.

B.

1.

As to Steinbrunner's claim of outrageous conduct/intentional infliction of emotional distress against the Funeral Home, the trial court found that Steinbrunner "failed to sufficiently support her cause of action." The plaintiff argues that the Funeral Home committed outrageous conduct that resulted in mistreatment of the decedent's body when in 1998, the Funeral Home did not have a record showing that decedent had actually been reburied in 1992; when in 1997, the Funeral Home failed to provide written verification of how the decedent's body was treated during his disinterment in 1992; when, during the second disinterment, it was discovered that the memorial record was not placed in the vial at the end of the casket, and a portion of the record in the casket was not completed; and because decedent's body appeared to be dressed in clothing different from those provided for his burial.

Outrageous conduct and intentional infliction of emotional distress are different names for the same cause of action. *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). Under Tennessee law, there are three elements necessary for a claim of outrageous conduct: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Id.* The legal principles involving the tort of outrageous conduct are set forth in *Alexander v. Inman*, 825 S.W.2d 102 (Tenn. Ct. App. 1991):

> The Tennessee Supreme Court first recognized the tort of outrageous conduct in *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 478-79, 398 S.W.2d 270, 274 (1966)....
>
> Establishing a test or legal standard for determining whether particular unseemly conduct is so intolerable as to be tortious

has proved to be difficult. ***Bryan v. Campbell***, 720 S.W.2d 62, 64 (Tenn. Ct. App. 1986). However, the test often used by our courts is the one found in Restatement (Second) of Torts § 46 comment d (1964) which states in part:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

***Id.*** at 104.

This Court has found certain conduct to be outrageous. In ***Johnson v. Woman's Hospital***, 527 S.W.2d 133 (Tenn. Ct. App. 1975), a mother sued the hospital for outrageous conduct in connection with the conduct of a staff member following the death of her infant child. ***Id.*** at 135. Shortly after her child's death, when the mother inquired about the treatment of her child's body, a hospital employee showed the mother a jar of formaldehyde containing the body. ***Id.*** at 136. This Court concluded that the hospital employee's conduct was outrageous. ***Id.*** at 140. Similarly, in ***Dunbar v. Strimas***, 632 S.W.2d 558 (Tenn. Ct. App. 1981), a medical examiner who was aware that a woman had experienced nervous or mental problems in the past, erroneously informed her that her daughter's death was not due to natural causes, but the result of sexual assault and suffocation. ***Id.*** at 559-60. Once again, this Court found that a cause of action for outrageous conduct existed. ***Id.*** at 562. Finally, in ***Dunn v. Moto Photo, Inc.,*** 828 S.W.2d 747 (Tenn. Ct. App. 1991), a woman was told by an employee at a photo store that he was unable to develop her pictures. ***Id.*** at 749. In reality, the employee developed and kept the partially nude photos of the woman and shared them with another customer who knew the woman. ***Id.*** This Court held that the employee's conduct was outrageous. ***Id.*** at 753-54.

We agree with the trial court's conclusion that the undisputed material facts do not show outrageous conduct on the part of the Funeral Home. First, based on the parameters of the aforementioned cases, and the principle that outrageous conduct is conduct which is so extreme as to go beyond the pale of decency, the evidence before the Court does not rise to such a level. Second, there is no evidence that the Funeral Home acted intentionally or recklessly in any dealings with Steinbrunner. In 1998, the Funeral Home did not have a record showing that decedent was actually reburied in 1992. Even though, according to T.C.A. § 68-3-510(a) (Supp. 2001), a funeral home is supposed to keep a record of the date, place, and manner of final disposition, there is no evidence that the Funeral Home intentionally or recklessly failed to keep this record. Furthermore, Tennessee law does not require a funeral home to keep a detailed record of how a body is treated during disinterment; nor is there any requirement that a memorial record be placed in a special vial inside the casket. Lastly, even though Steinbrunner claims that decedent was dressed in clothing different from that in which he was originally buried, decedent was reburied in a suit from a clothier in Ohio where, according to Steinbrunner's own testimony, decedent had purchased suits in the past. Because Steinbrunner failed to establish that the Funeral Home's conduct was intentional or reckless and "so outrageous as to not be tolerated by civil society," *see* **Bain**, 936 S.W.2d at 622, Steinbrunner has failed to satisfy two of the three elements of a cause of action for outrageous conduct. The Funeral Home was entitled to summary judgment on this issue.

2.

The trial court found that Steinbrunner's complaint "fail[ed] to state a claim upon which relief [could] be granted as to [Dr.] King." More specifically, the court found that Dr. King's actions arose out of his responsibilities as medical examiner. Furthermore, the court found that the evidence presented by Steinbrunner demonstrated that Dr. King acted in good faith in performing the medical examination and thus enjoys absolute immunity from the plaintiff's claims pursuant to T.C.A. § 38-7-112 (1997).

Steinbrunner argues that T.C.A. § 38-7-112 does not shelter Dr. King because, so the argument goes, her injuries are not the result of Dr. King's performance of a medical examination or autopsy of her husband, but were caused by Dr. King's actions on August 19, 1997, in discussing the autopsy and showing her the photographs of the decedent. Steinbrunner argues that the appropriate statute governing Dr. King's immunity is T.C.A. § 29-20-310(c) (Supp. 2001), a part of the Governmental Tort Liability Act, which grants a government employee immunity from suit for acts or omissions committed within the scope of employment, unless the act or omission is willful, malicious, criminal, or performed for financial gain. Steinbrunner alleges that Dr. King's immunity was lost because he committed acts of gross negligence and outrageous conduct, and both of these causes of action, if proven, include elements of willfulness and/or maliciousness.

Steinbrunner claims that Dr. King committed outrageous conduct during the meeting on August 19, 1997, when he told her that sawdust, newspapers, and rags are sometimes used to fill a body cavity, and he showed her the emergency room photographs of her husband's body. As to the photographs, Steinbrunner admits that Dr. King gave her a general warning about the nature of the photographs before showing them to her; however, she claims that he should have given her an

additional warning before showing her the last two photographs. Lastly, Steinbrunner insists that Dr. King's conduct was outrageous because he had no duty to show her the photographs of her husband or describe how funeral homes fill body cavities.

Dr. King's actions do not rise to the level of outrageous conduct so as to remove the medical examiner's immunity from suit under T.C.A. § 29-20-310(c). First, the meeting on August 19, 1997, was the first and only encounter Steinbrunner had with Dr. King, and Steinbrunner asked for the meeting to discuss and contest the results of her husband's autopsy. Second, as Steinbrunner testified in her deposition, she had spoken to a former employee of Dr. King's office and was aware that Dr. King had photographs of her husband's body that were taken after his death. Third, Steinbrunner testified that she asked Dr. King questions about the autopsy procedure, removal and disposal of organs, and how a body cavity is refilled after organs are removed. In response to Steinbrunner's questions, Dr. King explained the autopsy process and told Steinbrunner that some funeral homes use filler such as towels and sawdust. It is undisputed, however, that Dr. King did not tell Steinbrunner that the Funeral Home had used that type of filler or that this filler had actually been placed in decedent's body.

As for the photographs, Steinbrunner admits that Dr. King warned her about them before showing her the first picture. Dr. King testified that he showed her the pictures to help illustrate how he reached his conclusion about decedent's cause of death, and he thought that his warning would be sufficient to cover all eleven pictures. Steinbrunner testified that she never told Dr. King before seeing the photographs that she did not want to see them or that seeing them would upset her. She also never asked him to stop showing her the pictures at any time during the meeting. Additionally, Steinbrunner left Dr. King's office with the photographs and made copies at Kinko's.

There is nothing in the record that suggests, in any way, that Dr. King's conduct was legally outrageous. Dr. King was simply trying to address Steinbrunner's questions regarding the autopsy. It was reasonable for Dr. King to conclude that a person who comes to his office asking very specific questions about an autopsy and organ removal could be expected to handle specific answers illuminated by graphic photos. Yet, Dr. King was concerned enough about Steinbrunner's feelings to warn her before showing her any photographs. Subsequent to the warning, Dr. King was given no indication by Steinbrunner that seeing the photographs would be emotionally upsetting. Furthermore, Steinbrunner never told Dr. King, during the conversation or while viewing the photographs, that the material was upsetting. Finally, Steinbrunner's own deposition testimony establishes an absence of outrageous conduct when she stated that she could not identify anything that Dr. King did that she thought reflected an intent to cause her any physical, mental or emotional pain, distress or agony other than he was in a hurry. Steinbrunner's claim is without merit.

C.

Steinbrunner argues that the Funeral Home was negligent because it owed her a duty to treat decedent's body with respect and it breached that duty by "not dressing the body in the proper clothing, not maintaining the appropriate paperwork, and not identifying the body." The Funeral Home argues that Steinbrunner failed to establish either a duty owed to her by the Funeral Home or

the standard of care required in fulfilling that duty. As a result, the Funeral Home argues that Steinbrunner failed to establish a prima facie case of negligence.

In response to the allegation that the Funeral Home negligently failed to dress decedent in the proper clothing, the Funeral Home asserts that decedent's body was properly clothed in a single breasted two-button suit jacket purchased from a store in Ohio where Steinbrunner testified her husband purchased some of his clothing. The Funeral Home also claims that it was not negligent in failing to maintain the proper paperwork in 1992 because it kept all of the records required by Tennessee law at that time. Furthermore, the Funeral Home asserts that it was not negligent in failing to attach a permanent identification to the body in 1992 because T.C.A. § 62-5-313(d)(1) (Supp. 2001), which requires a funeral home to attach permanent identification to a body, was not added to the statute until 1995. As such, the Funeral Home did not have a duty to attach permanent identification to decedent in 1992.

"No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." ***Bradshaw v. Daniel***, 854 S.W.2d 865, 869 (Tenn. 1993); *see also* ***McClenahan v. Cooley***, 806 S.W.2d 767, 774 (Tenn. 1991); ***Lindsey v. Miami Dev. Corp.*** 689 S.W.2d 856, 858 (Tenn. 1985). "While duty was not part of the early English common law jurisprudence of tort liability, it has since become an essential element in negligence cases." ***Bradshaw***, 854 S.W.2d at 869 (footnote omitted). "The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court." ***Id***. In determining whether a duty is owed, the court should consider whether "such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of the other – or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." W. Page Keeton, Prosser & Keeton on the Law of Torts, § 37 at 236 (5th ed. 1984).

In general, a defendant owes a plaintiff a duty of "reasonable care under all of the circumstances." ***Doe v. Linder Constr. Co.***, 845 S.W.2d 173, 177 (Tenn. 1992). Reasonable care must be defined in the context of the particular circumstances of the parties. ***Id***. at 178. "If the injury which occurred could not have been reasonably foreseen [by the defendant], the duty of care does not arise, and even though the act of the defendant in fact caused the injury, there is no negligence and no liability." ***Id.*** (citing ***Spivey v. St. Thomas Hospital***, 31 Tenn. App. 12, 211 S.W.2d 450, 456 (1948)).

The Funeral Home owed Steinbrunner a duty to conform to a reasonable person standard of care under all of the circumstances. This duty is based upon the relationship between the parties. We find that the Funeral Home satisfied a reasonable person standard of care under all the circumstances present in this case. The Funeral Home maintained paperwork regarding the decedent and reburied him in proper clothing. Moreover, because the Funeral Home did not have a duty to attach identification to decedent's body in 1992, the Funeral Home was not negligent in failing to attach such identification. In an agreed order entered February 28, 2001, the parties agreed that there

is no issue as to the applicability of T.C.A. § 62-5-313(d)(1), and that all allegations as to any violation of this statute were dismissed with prejudice. Nevertheless, Steinbrunner tries to raise this issue on appeal. This she cannot do. We find that Steinbrunner's claims of negligence are without merit.

D.

Steinbrunner claims the Funeral Home violated T.C.A. § 68-3-510 by failing to fill in the final block of information on the disinterment/reinterment permit, and as a result, this caused emotional distress because she was not certain of the identity of the body in the casket when it was exhumed on March 10, 1998.

The Funeral Home contends that it complied with T.C.A. § 68-3-510 by securing a disinterment/reinterment permit from the health department. However, the Funeral Home argues that if not filling out the final section is a violation of the statute, the violation is not sufficient to support a claim of negligence *per se*. In support of this argument, the Funeral Home cites ***Bish v. Smith & Nephew Richards, Inc.***, C/A No. W1998-00373-COA-R9-CV, 2000 WL 1294324, at *2 (Tenn. Ct. App. W.S., filed Aug. 23, 2000), which held that "a statutory negligence *per se* claim cannot stand unless the statute establishes a standard of care." ***Id.*** Furthermore,

> [w]here a statutory provision does not define a standard of care but merely imposes an administrative requirement, such as the requirement to obtain a license or to file a report to support a regulatory scheme, violation of such requirement will not support a negligence *per se* claim. Even if the regulatory scheme as a whole is designed to protect the public or to promote safety, the licensing duty itself is not a standard of care, but an administrative requirement.

***Id.***

According to T.C.A. § 68-3-510 (2001),

> (a) When a dead body is released or disposed of by an institution, the person in charge of the institution shall keep a record showing the name of the deceased, date of death, name and address of the person to whom the body is released, date of removal from the institution, or if finally disposed of by the institution, the date, place and manner of disposition.
>
> (b) A funeral director, embalmer or other person who removes from the place of death or transports or finally disposes of a dead body or fetus, in addition to filing any certificate or other report required by this chapter or regulations

> promulgated hereunder, shall keep a record which shall
> identify the body, and such information pertaining to this
> receipt, removal and delivery of the body as may be provided
> in regulations adopted by the department.

Like the statute in **Bish**, T.C.A. § 68-3-510 does not specify a standard of care or impose a penalty for failure to comply with each requirement of the statute. Compliance with the statute is an administrative requirement and as such, violation of the statute cannot support a claim of negligence *per se*. Therefore, we find that Steinbrunner's claim of negligence *per se* is without merit.

E.

1.

Steinbrunner claims that the Funeral Home's "failure to maintain the records required by statute and failure to treat the body with respect and dignity shows...such disregard for the rights of others that a jury could imply a conscious indifference to the consequences." The Funeral Home responds that because Steinbrunner cannot make out a prima facie case of negligence, she cannot maintain a cause of action for gross negligence.

We find that Steinbrunner failed to establish a cause of action for gross negligence. Gross negligence is "a negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." **Ruff v. Memphis Light, Gas and Water Div.**, 619 S.W.2d 526, 528 (Tenn. Ct. App. 1981) (quoting **Odum v. Haynes**, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972)). Because we find that Steinbrunner failed to establish that the Funeral Home committed an act of negligence, and because a finding of negligence is essential to a claim of gross negligence, we find that Steinbrunner failed to establish that the Funeral Home acted in a grossly negligent manner.

2.

The trial court found that Dr. King's actions arose out of his duties under T.C.A. § 38-7-112, and as such, he enjoys immunity from Steinbrunner's claims. Steinbrunner alleges that the manner in which Dr. King treated her constitutes gross negligence. As evidence of Dr. King's conscious indifference toward her, Steinbrunner cites a statement from Dr. King's deposition, "her emotional state did not really concern me as much as her–her irrational conversation." Steinbrunner argues that a jury hearing this statement could find that Dr. King's conduct was outrageous. To the contrary, we find that based on Dr. King's statement, a jury only could conclude that Dr. King was concerned about Steinbrunner but that her irrational conversation concerned him more than her emotional state. We find that Steinbrunner's claim is without merit.

VI.

The defendants have shown that there is no genuine issue of material fact as to any of the plaintiff's causes of action and that they are entitled to a judgment as a matter of law. Accordingly, the judgment of the trial court is affirmed. This case is remanded to the trial court for collection of costs assessed below, pursuant to applicable law. Costs on appeal are taxed to Wanda J. Steinbrunner.

_____
CHARLES D. SUSANO, JR., JUDGE